# OLD COLONY TRUST COMPANY *v.* CITY OF OMAHA.

## APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEBRASKA.

No. 754.   Argued February 27, 28, 1913.   Reargued April 10, 11, 1913.
—Decided June 16, 1913.

A municipality, being a creature of the State, derives its powers from the laws thereof, and is within the influence of the decisions of the State's court of last resort.

Under the laws of Nebraska, as construed by the highest courts of that State, municipalities had the power in 1884 of granting licenses to use the streets for public business; and, in the absence of specific lim-

itation of duration, such licenses were in perpetuity and conveyed rights of property within the protection of the contract clause of the Constitution of the United States.

Such grants are subject to reasonable police power of the State and forfeitable for acts of abuse or non-user; but they cannot be taken away or impaired arbitrarily.

Decisions of the highest court of the State relating to such matters of local law as the construction of the constitution and statutes of the State and the powers of its municipalities, are controlling upon this court, so long as their application involves no infraction of rights secured by the Constitution of the United States.

In the absence of any controlling statute, this court will not give any greater effect to the syllabus of a case decided by the highest court of a State and reported in the official reports of that court than is given thereto in the courts of the State.

A provision in an ordinance that the grantee of a franchise to use the streets of a municipality may be required to remove therefrom what it has placed therein under the franchise when necessity demands, *held*, in this case, not to be an intention to limit the franchise to the corporate existence of the grantee.

An ordinance, not based upon necessities of the municipality, requiring an electric light company to remove its poles and wires *held*, in this case, to be an arbitrary impairment of the contract of the. original ordinance granting the right in perpetuity and therefore void because unconstitutional under the contract clause of the Constitution of the United States.

*Quære* what is the exact meaning of the phrase "general electric light business" as used in an ordinance granting a franchise to a corporation for that purpose, and whether it includes distribution of electricity for power and heat.

The practical interpretation of a contract by the parties thereto for a considerable period before a controversy arises is of great, if not controlling, influence; and this rule is applicable in Nebraska as in the nature of estoppel.

Acquiescence by the municipality in the extension of a franchise for electric light to distribution of electricity for power and heat evidenced, as in this case, by collection of taxes imposed on receipts therefrom and the purchase by the city of current for power, *held*, to entitle those who had advanced money on the security of the franchise to insist upon the recognition and continuation of the right of the corporation to supply electricity for power and heat as well as light; and an ordinance requiring the corporation to discontinue

such distribution of heat and power is void under the contract clause of the Constitution of the United States.

A judgment against a corporation construing its franchise is not *res judicata* as against a mortgagee who was not a party to the suit and whose rights were acquired prior to the commencement of the suit in which the judgment was entered.

THE facts, which involve the construction of ordinances of the city of Omaha, Nebraska, granting franchises for distribution of electric current, the extent of the rights thereunder and the effect of subsequent ordinances thereon and the constitutionality of the latter under the contract clause of the Constitution of the United States, are stated in the opinion.

*Mr. William D. McHugh* for appellant:

The ordinance in question granted to the New Omaha Thomson-Houston Electric Light Co. or assigns, a right of way over the streets of the city of Omaha for the purposes named "in perpetuity." For views as to the nature of the right "in perpetuity," see *Am. Water Works Co.* v. *State*, 46 Nebraska, 194; *Potwin Place* v. *Topeka Ry. Co.*, 51 Kansas, 609; *Fellows* v. *Los Angeles*, 151 California, 52; *Nebraska Tel. Co.* v. *City of Fremont*, 72 Nebraska, 25; *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650; *State* v. *Neb. Tel. Co.*, 17 Nebraska, 126; *State* v. *S. C. & P. R. R. Co.*, 7 Nebraska, 374.

The circumstances attending the passage of the ordinance in question negative the idea that the grant of the right of way was for a limited term.

The provision in the ordinance in question to the effect that whenever the city council shall, by ordinance, declare the necessity of removing from the public streets of the city of Omaha, the telegraph, telephone or electric poles, the grantee company shall, within sixty days from the passage of the ordinance, remove its poles from such streets and alleys, was not a reservation of a power to

terminate at will the grant of the right of way. *New Orleans* v. *Great So. Tel. Co.*, 40 La. Ann. 41; *Louisville* v. *Cumberland Tel. Co.*, 224 U. S. 649; *Northwestern Tel. Co.* v. *Minneapolis*, 81 Minnesota, 140.

A public service corporation may accept a grant of a right of way for a period longer than its corporate existence. *Detroit* v. *Citizens' St. Ry. Co.*, 184 U. S. 368.

As the ordinance in question granted a right of way in terms which expressly recognize the right of assignment, and without limitation as to time and with no reservation of power in the city to alter or revoke the same, under general principles of law the grant of the right of way to the company or assigns was in perpetuity. *Blair* v. *Chicago*, 201 U. S. 400; *Morristown* v. *East Tenn. Tel. Co.*, 115 Fed. Rep. 304; *Citizens' Ry. Co.* v. *Detroit Ry. Co.*, 171 U. S. 48; *Detroit* v. *Citizens' St. Ry. Co.*, 184 U. S. 368; *People* v. *O'Brien*, 111 N. Y. 1; *Turnpike Co.* v. *Illinois*, 96 U. S. 63; *Louisville* v. *Cumberland Tel. Co.*, 224 U. S. 649.

It is the settled law of Nebraska, evidenced by a series of decisions by the Supreme Court of that State, that an ordinance such as the one in question grants to the company named, on acceptance, a right of way in perpetuity, and that cities in Nebraska have power to make such grants in perpetuity. *Plattsmouth* v. *Nebraska Tel. Co.*, 80 Nebraska, 460; *Nebraska Tel. Co.* v. *Fremont*, 72 Nebraska, 25; *Sharp* v. *South Omaha*, 53 Nebraska, 700; *State* v. *Citizens' St. Ry. Co.*, 80 Nebraska, 357; *State* v. *Lincoln Street Ry. Co.*, 80 Nebraska, 333.

All departments of the State have accepted this rule of law.

The charter powers of the city of Omaha, in 1884, were as broad as were the charter powers of those cities which the Supreme Court of Nebraska held were authorized to grant such a right of way in perpetuity.

The bondholders represented by complainant, purchased

their bonds with knowledge of and in reliance upon the law of Nebraska as announced by its Supreme Court, to the effect that the city of Omaha had, under its charter, authority to grant the right of way in perpetuity, and that by such ordinance there was granted such a right of way in perpetuity.

The law of the State of Nebraska as declared by its Supreme Court construing the powers of cities under the statutes of that State and construing the effect of ordinances passed by such cities pursuant to such charter authority, entered into and became part of the contract evidenced by the ordinance in question and its acceptance. *Brine v. Ins. Co.*, 96 U. S. 634; *Edwards* v. *Kearzey*, 96 U. S. 595; *Gulf and Ship Island R'd Co.* v. *Hewes*, 183 U. S. 71.

Where, upon the faith of a state decision affirming the validity of contracts made or bonds issued under a statute, other contracts have been made or bonds issued under similar statutes, neither the legislature nor the judiciary of a State can modify the law so as to impair the obligation of the contract previously made. *Loeb* v. *Columbia Township*, 179 U. S. 472; *Taylor* v. *Ypsilanti*, 105 U. S. 71; *Wade* v. *Travis Co.*, 174 U. S. 499; *Wilkes County* v. *Coler*, 180 U. S. 506.

The distribution and sale of electric energy to be utilized for power and heat purposes, is included within the expression "general electric light business" for the transaction of which the right of way was granted.

This is evidenced by the literature, scientific and popular, showing the state of the art of electric lighting in 1884.

The city of Omaha and the company operating the plant under the ordinance in question have, for more than twenty years, in carrying out the provisions of the ordinance, uniformly placed a practical construction upon the said ordinance, interpreting the same to mean that the company had the right thereunder to distribute elec-

tric energy for power and heat purposes.    *Atty. Gen.* v. *Drummond,* 1 Dru. & Wall. 353; *Brown* v. *United States,* 113 U. S. 570; *Chicago* v. *Sheldon,* 9 Wall. 50; *Clark's Turnpike Co.* v. *Commonwealth,* 96 Kentucky, 525; *Columbia* v. *Gallagher,* 124 U. S. 510; *Insurance Co.* v. *Dutcher,* 95 U. S. 269; *New York* v. *Starin,* 106 N. Y. 1; *Mobile* v. *Louisville & N. R. R. Co.,* 84 Alabama, 115; *Gas Light Co.* v. *St. Louis,* 46 Missouri, 121; *School District* v. *Estes,* 13 Nebraska, 53; *State* v. *Cass Co.,* 60 Nebraska, 566; *United States* v. *Hill,* 120 U. S. 180; *United States* v. *Moore,* 95 U. S. 763; *United States* v. *Burlington R. R. Co.,* 98 U. S. 341.

The city of Omaha, by its legislation and acts during twenty years, has become and is estopped to deny the right of the company operating the plant, to distribute through its system, electric current for power and heat purposes as and to the extent it was doing when the resolution complained of was passed.    *Omaha St. Ry. Co.* v. *Omaha,* 90 Nebraska, 6; *State* v. *Citizens' St. Ry. Co.,* 80 Nebraska, 357; *State* v. *Lincoln Street Ry. Co.,* 80 Nebraska, 333.

The decision in the case brought by the Omaha Electric Light and Power Company cannot affect the decision in this cause, since neither the bondholders nor their trustee were parties to that litigation.    *Keokuk & Western Rd.* v. *Missouri,* 152 U. S. 301; *Louisville Trust Co.* v. *Cincinnati,* 76 Fed. Rep. 296.

*Mr. Benjamin S. Baker,* with whom *Mr. William C. Lambert, Mr. John A. Rine* and *Mr. L. J. TePoel,* were on the brief, for appellee:

Appellant has not pleaded or proved sufficient to entitle it to maintain the action.

Ordinance 826 was not a perpetual grant to the grantee. *Omaha Electric Light Co.* v. *Omaha,* 179 Fed. Rep. 455. No necessity existed for a perpetual grant.    *Blair* v. *Chi-*

*cago*, 201 U. S. 400, 505; *Railroad Co.* v. *Logansport*, 114 Fed. Rep. 688; *Pennsylvania R. R. Co.* v. *Canal Commissioners*, 21 Pa. St. 9, 22; *Rock Island* v. *Central Telephone Co.*, 132 Ill. App. 248; *People* v. *Central Telephone Co.*, 232 Illinois, 260; *People* v. *Chicago Tel. Co.*, 220 Illinois, 238; *Snell* v. *Chicago Railroad Co.*, 236 Illinois, 413; *Telephone Co.* v. *Telephone Co.*, 118 Kentucky, 277; *Louisville Trust Co.* v. *Commonwealth*, 76 Fed. Rep. 296.

The municipal authorities were without power to make a perpetual grant. Section 16, Art. 1, Const. Nebraska; *Bank of Augusta* v. *Earle*, 13 Peters, 227; *Birmingham* v. *Railway*, 99 Alabama, 464; *Mobile* v. *Railroad Co.*, 84 Alabama, 115; McQuillan Mun. Ord., § 200; *San Antonio Traction Co.* v. *Altgeldt*, 200 U. S. 304.

The legislature of the State had not authorized the municipal authorities to make a perpetual grant. Section 15, Chap. 10, Laws Nebraska 1883, p. 89; Subd. 8, § 15, Chap. 10, Laws Nebraska, p. 90; *Ottawa* v. *B. S. Carey*, 108 U. S. 112; *Rhinehart* v. *Redfield*, 93 App. Div. (N. Y.) 410; *Jackson R. R. Co.* v. *Interstate Railroad Co.*, 24 Fed. Rep. 306; *Barnett* v. *Dennison*, 145 U. S. 135; *Railroad* v. *Logansport*, 114 Fed. Rep. 688; *Artesian Water Co.* v. *Boise City*, 123 Fed. Rep. 232; *Water Co.* v. *Hutchinson*, 207 U. S. 385; *People's R. R. Co.* v. *Memphis R. R. Co.*, 10 Wall. 38; *Water Co.* v. *Freeport*, 180 U. S. 587; *Water Co.* v. *Danville*, 180 U. S. 619; *Water Co.* v. *Fergus*, 180 U. S. 624; *Water Co.* v. *Knoxville*, 189 U. S. 434; *Home Telephone Co.* v. *Los Angeles*, 211 U. S. 265; *Marshall* v. *Wyandotte Gas Co.*, 127 Pac. Rep. 639; *Woodland* v. *Leach*, 127 Pac. Rep. 1040.

The Supreme Court of Nebraska has not decided that city authorities with charter powers similar to those of Omaha at the time are vested with authority to make a perpetual grant. *Brown* v. *Holliday*, 34 Nebraska, 232; *Nebraska Telephone Co.* v. *Fremont*, 72 Nebraska, 25;

*Plattsmouth* v. *Telephone Co.*, 80 Nebraska, 460; *Sharp* v. *South Omaha*, 53 Nebraska, 700; *State* v. *Lincoln Street Railway Co.*, 80 Nebraska, 333; *State* v. *Citizens' Street Railway Co.*, 80 Nebraska, 357.

The life of the grant was limited by the life of the grantee. *Blair* v. *Chicago*, 201 U. S. 400, 505; *Detroit* v. *Citizens' Railway Co.*, 184 U. S. 388, 395; *St. Louis* v. *Laclede Gas Light Co.*, 102 Missouri, 472; *Turnpike Co.* v. *Illinois*, 96 U. S. 63; *Electric Light Co.* v. *Wyandotte*, 126 Michigan, 43; *Rock Island* v. *Central Telephone Co.*, 132 Ill. App. 248; *Virginia Road Co.* v. *People*, 22 Colorado, 429; *People* v. *Central Tel. Co.*, 232 Illinois, 260; *People* v. *Chicago Telephone Co.*, 220 Illinois, 238; *Snell* v. *Chicago*, 133 Illinois, 413; *Venner* v. *Chicago City R. Co.*, 236 Illinois, 349; *Telephone Co.* v. *Telephone Co.*, 118 Kentucky, 277; *Louisville Trust Co.* v. *Cincinnati*, 76 Fed. Rep. 296; *Lake Roland Elevated R. Co.* v. *Baltimore*, 77 Maryland, 352; *Louisville* v. *Cumberland Telephone Co.*, 224 U. S. 649.

The reservation in the grant should control against the claim of perpetuity. *Telephone Co.* v. *Richmond*, 44 C. C. A. 147; *Gas Light Co.* v. *Hamilton*, 146 U. S. 258; *Stein* v. *Bienville Water Co.*, 141 U. S. 67; *Bridge Co.* v. *United States*, 105 U. S. 470.

Ordinance 826 did not authorize its grantee to distribute current for power.

The city of Omaha has never practically or otherwise construed the grant to mean or to authorize the distribution of current for power. *Electric Co.* v. *Cleveland*, 204 U. S. 116; *Charles River Bridge* v. *Warren Bridge*, 11 Peters, 496; *People* v. *Deehan*, 153 N. Y. 528; *Citizens' Fire Ins. Co.* v. *Doll*, 35 Maryland, 89; *Railroad Co.* v. *Trimble*, 10 Wall. 367; *Morris* v. *Thomas*, 57 Indiana, 316; *State* v. *Cass County*, 60 Nebraska, 66; *School District* v. *Estes*, 13 Nebraska, 52; *Hale* v. *Shehan*, 52 Nebraska, 184; *Water Co.* v. *Hutchinson*, 207 U. S. 385; Abbott, Municipal Corpora-

tions, § 907; *Chicago Railway Co.* v. *Elliot*, 88 Fed. Rep. 941; *Scranton Electric Co.'s Appeal*, 122 Pa. St. 154, 15 Atl. Rep. 446.

The city of Omaha has never estopped itself to deny the company the right to distribute current for power. *Crary* v. *Dye*, 208 U. S. 515; *Louisville Trust Co.* v. *Cincinnati*, 76 Fed. Rep. 296; *Detroit* v. *City Railway Co.*, 56 Fed. Rep. 867; *Mobile* v. *Sullivan Timber Co.*, 129 Fed. Rep. 298; *Philadelphia Mortgage Co.* v. *Omaha*, 63 Nebraska, 280; *Brant* v. *Virginia Coal Co.*, 93 U. S. 326; 1 Story, Equity, 391; *State* v. *Lincoln Railway Co.*, 80 Nebraska, 333; *State* v. *Citizens' Railway Co.*, 80 Nebraska, 357; *Omaha Railway Co.* v. *Omaha*, 90 Nebraska, 6.

Appellant is concluded by the adjudication in the case of *Omaha Electric Light and Power Co.* v. *Omaha*. *Keokuk Western R. R. Co.* v. *Missouri*, 152 U. S. 313; *Louisville Trust Co.* v. *Cincinnati*, 76 Fed. Rep. 296; *Mumma* v. *Potomac Co.*, 8 Peters, 102; *Chicago Life Ins. Co.* v. *Needles*, 113 U. S. 574; *New Orleans Water Co.* v. *Louisiana*, 185 U. S. 336; *Duluth* v. *Gas and Water Co.*, 45 Minnesota, 210; *Minneapolis* v. *Street Railway Co.*, 215 U. S. 417; *Calder* v. *People*, 218 U. S. 591; *S. C.*, 115 Michigan, 724.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

The principal questions presented by this suit are, first, whether the Omaha Electric Light and Power Company, which will be spoken of as the Electric Company, has a subsisting franchise to occupy and use the streets, alleys and public grounds of the city of Omaha, Nebraska, in the distribution of electric current, and, second, whether, if so, the franchise is limited to the distribution of such current for lighting purposes or includes its distribution for power and heating purposes. If there be a franchise it rests

primarily upon the following ordinance adopted by the council of the city in December, 1884:

"The New Omaha-Thompson-Houston Electric Light Company or assigns, is hereby granted right of way for erection and maintenance of poles and wires with all the appurtenances thereto, for the purpose of transacting a general Electric Light business, through, upon and over the streets, alleys and public grounds of the City of Omaha, Neb., under such reasonable regulations as may be provided by ordinance: *Provided,* That said company shall at all times, when so requested by the city authorities, permit their poles and fixtures to be used for the purpose of placing and maintaining thereon any wires that may be necessary for the use of the Police or Fire Department of the city; *and further provided,* such poles and wires shall be erected so as not to interfere with ordinary travel through such streets and alleys; *and provided,* that whenever it shall be necessary for any person to move along or across any of said streets or alleys any vehicle or structure of such height or size as to interfere with any poles or wires so erected, the company using and operating such poles and wires shall, upon receiving twelve hours' notice, thereof, temporarily remove such poles and wires from such place as must necessarily be crossed by such vehicle or structure; *and provided further* that whenever the city council shall by ordinance declare the necessity of removing from the public streets or alleys of the City of Omaha, the telegraph, telephone or electric poles, or wires thereon constructed or existing, said company shall, within sixty days from the passage of such ordinance, remove all poles and wires from said streets and alleys by it constructed, used or operated."

The Thompson Company, to which the grant was made, was not then incorporated, but was subsequently incorporated under the laws of Nebraska for a term which was to expire September 26, 1905. It accepted the grant,

constructed and put into operation a central generating station and an extensive distributing system, and thereby placed itself in a position to supply electric current to those desiring to use it. At first the current was used almost exclusively for lighting purposes, but it came gradually to be used for power and heat, and in a few years the Thompson Company held itself out as distributing current for all three purposes. The generating plant was enlarged and improved from time to time, and the distributing system extended and adjusted, to meet the increasing demand for current for power and heat as well as for light. In 1903 the entire plant and all rights under the ordinance were transferred by the Thompson Company to the Electric Company, and the business established by the former has since been conducted in increasing volume by the latter. In 1891 the gross earnings from current for lighting purposes was $104,646.63 and for power and heat $4,237.67. In 1903 these figures had increased to $261,421.89 and $50,390.11, respectively, and in 1908 to $563,447.57 and $130,537.72. By a series of ordinances, beginning in 1892, the city regulated in material ways the business of the two companies, each in turn, in distributing current for the three purposes, and by ordinances adopted in 1902 and 1904 the city required all their wires within designated districts, whether the current was used for light or for power or heat, to be placed in underground conduits, the ordinances being duly obeyed at a cost of $479,215.00. After March 4, 1902, the two companies, each in turn, were required to pay, and did pay, to the city three per cent. of the gross earnings from their business, including the receipts from the use of current for power and heat. The city also became and remained a purchaser of current in substantial quantities, to be used for power purposes.

In these and various other ways disclosed by the record the city acquiesced in, encouraged and directly sanctioned

the action of the two companies in successively equipping and adjusting the electric plant, at great expense, for the distribution of current for power and heat, knowing that they were engaging therein under a claim of right under the ordinance of 1884. Fifteen circuits were established to supply the current for those purposes exclusively. Prior to May 26, 1908, no objection whatever was made by the city to the use of the streets, alleys and public grounds for those purposes, but, on the contrary, it was satisfied and content therewith. On that day the city council, to use the words of the city's answer, "elected to terminate" that use and passed the following resolution, which was approved by the mayor:

"Resolved by the City Council of the City of Omaha, the Mayor concurring, that the City Electrician be and he is hereby ordered and directed to disconnect, or cause to be disconnected on or before July 1st, 1908, all wires leading from the conduits or poles of the Omaha Electric Light and Power Company transmitting electricity to private persons or premises to be used for heat or power; and to take such steps as may be necessary to prevent the said Omaha Electric Light and Power Company from furnishing or transmitting from the conduits or wires electricity to private persons or premises for heat or power purposes."

This suit is prosecuted by the Old Colony Trust Company, a Massachusetts corporation, against the city of Omaha, to enjoin the enforcement of that resolution. The trust company is the trustee in a mortgage executed in 1903 by the Electric Company upon all of its property, including its rights under the ordinance of 1884, to secure the payment of upwards of $2,000,000 of bonds issued by it in 1903 and 1904. The claim of the trust company, as set forth in the bill, is that the resolution of 1908 is a law of the State impairing the obligation of the contract resulting from the ordinance of 1884 and the action of the

parties in interest thereunder, on the faith of which contract the bonds were purchased by their several holders, and that the resolution is therefore void, because repugnant to § 10 of Article I of the Constitution of the United States.

The first question to be considered is, whether the privilege or franchise granted by the ordinance of 1884 is still subsisting, because if it has expired it will not be necessary to inquire whether it and the action of the parties thereunder resulted in any contractual rights respecting the use of the streets of the city in the distribution of current for power and heating purposes.

What was the life or duration of the privilege granted by the ordinance? Was it in perpetuity or for the corporate existence of the grantee? There is no claim, nor could there reasonably be, that it was during the pleasure of the city, or revocable at will. The trust company contends that it was a grant in perpetuity, and the city that it was for the corporate existence of the grantee. While the arguments have taken a wide range, it is of first importance to give attention to the statutes and decisions of Nebraska, because the city, being a creature of that State, derives its powers from the laws thereof and is necessarily within the influence of the decisions of the State's court of last resort.

By the charter of the city in force at the time, the city council was charged with "the care, management, and control of the city" and was given power "to provide for the lighting of streets" and "to care for and control . . . streets, avenues, parks, and squares within the city." Act of February 21, 1883, Laws 1883, p. 89, c. 10, § 15, subdivs. 8, 24.

In *Sharp* v. *South Omaha*, 53 Nebraska, 700, 705, the Supreme Court of the State had occasion to consider similar charter provisions and to determine whether and for what time they authorized the city council to grant

a franchise to use the streets for supplying gas to the people of the city. It was held that there was "an ample grant of power, unqualified as to persons, method or time, to regulate the laying down of mains, the sale and use of gas, and the rate to be charged therefor."

In *Nebraska Telephone Co.* v. *Freemont*, 72 Nebraska, 25, 29, there was involved a grant by the city council, under like charter provisions, to the Freemont Telephone Company, an unincorporated association, of the right to erect and maintain telephone poles and wires in the streets of the city, the ordinance being silent as to the life of the grant. The court said: "By the terms of the ordinance, there was a grant to the association, in perpetuity, of a right of way or easement over all its public ways, without restriction or limitation."

*State ex rel.* v. *Lincoln Street Railway Co.*, 80 Nebraska, 333, 343, involved the construction of an act (February 15, 1877, Laws 1877, p. 135) relating to the acquisition of a street franchise for a street railroad company. The act provided for the submission to the electors of the simple question whether the grant should be made through particular streets, which were required to be designated in the articles of incorporation and in the notice of the election, and also provided that if the consent of the electors was given, the railroad company could proceed with the construction and operation, "subject to such rules and regulations as may be prescribed by ordinance of such city." The act said nothing about the duration of the right. The court said: "This consent of the electors, when legally given to a legal proposition submitted to them, constitutes, in our view, a grant of a right of way on and over the streets named in the articles of incorporation and in the notice for the election, and confers upon the railway company an easement in the street which is irrevocable after the company has, within a reasonable time, acted upon the permission given and constructed

its lines of road." To the, same effect is *State ex rel* v. *Citizens Street Railway Co.*, 80 Nebraska, 357, 360.

In *Plattsmouth* v. *Nebraska Telephone Co.*, 80. Nebraska, 460, 466, there was brought in question the right of a telephone company under an ordinance granting to it, its successors and assigns, the right of way for the erection and maintenance of poles and wires through the streets, alleys and public grounds of the city. The provisions of the city charter were substantially like those here. The power of the city to grant the right, or to make it more than a right revocable at will, was challenged, but the court denied both branches of the contention, saying: "Under the general power given to the plaintiff [the city] by its charter and the general control which it exercises over the streets and public grounds of the city, its right to extend to the defendant the privilege of occupying its streets and public grounds cannot be questioned," citing *Nebraska Telephone Co.* v. *Freemont, supra.* The city had passed an ordinance, not grounded upon any matter of necessity, requiring the poles and wires to be removed from some of the streets, and the court pronounced that ordinance invalid.

But while these decisions take an uniform view of the power of the cities of the State and of the effect of their action in cases such as this, and show that the grant made by the ordinance of 1884 must be regarded as in perpetu-. ity, they also show that such grants are deemed and held by that court to be ever subject to the full exertion of the police power of the State in respect of the rates to be .charged, the mode of conducting the business, and the character and quality of the service rendered. And it is further held that the public nature of the grant explains and justifies it, and that it is forfeitable for acts of abuse, abandonment or nonuser, but cannot be taken away or impaired arbitrarily.

But it is said that this grant cannot be held to be in

perpetuity, because to do so is to bring it in conflict with § 16 of art. 1 of the state constitution, which declares that "no law making any irrevocable grant of special privileges or immunities shall be passed," and this contention is made although it is conceded, as it must be, that the grant is not exclusive and does not prevent the city from making like grants to others or from establishing and operating a competing municipal plant. The contention is answered and shown to be untenable by the decision of the Supreme Court of the State in *Plattsmouth* v. *Nebraska Telephone Co., supra,* from which we excerpt the following (p. 464):

"The argument upon which it attempts to maintain the invalidity of the statute [ordinance] is as follows: Section 15, art. III of our constitution, prohibits the legislature from passing local or special laws granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever; and it is said that the legislature cannot delegate to a municipality a power which it cannot itself exercise. It is claimed that the ordinance in question is an attempt to grant to the defendant a special privilege or franchise, and that this is beyond the power of the municipal authorities. If we should concede (which we do not) that a general law, granting to cities and towns the powers which are usually found in their charters, did not confer upon such municipalities the power to pass and enforce special ordinances suited to their local conditions, still the ordinance in question is not subject to the criticism made upon it. A special privilege in constitutional law is a right, power, franchise, immunity or privilege granted to, or vested in, a person or class of persons to the exclusion of others and in derogation of common right. . . . Ordinance No. 91 does not attempt to confer upon the defendant any exclusive right or franchise, and leaves it open for the city, at any time, to extend to other companies or corporations the same privileges awarded to the defendant. The conten-

tion, therefore, that ordinance No. 91 is void and confers no right upon the defendant cannot be sustained."

To the state decisions here cited, counsel for the city interposes the objection that they are not well grounded and that some of them go beyond what is expressed in the syllabus. We need not say more of the first branch of the objection than that as the decisions relate to matters of local law, namely, the construction of the state constitution and statutes and the powers of local municipal corporations, they must be regarded by us as controlling, when their application involves no infraction of any right granted or secured by the Constitution of the United States. Such an infraction is not suggested, nor could it reasonably be. The other branch of the objection is not based upon any statute or rule of court in Nebraska, giving controlling effect to the syllabus. At most it rests upon a statement in *Holliday* v. *Brown*, 34 Nebraska, 232, respecting "an unwritten rule" to that effect, but what was said upon the subject in that case has been so pointedly criticised and so far restrained in *Williams* v. *Miles*, 68 Nebraska, 463, 479, that it is not controlling. Of course, it ought not to be given greater effect here than in the courts of the State.

We have seen that the ordinance of 1884 contained the following reservation or qualification: "That whenever the city council shall by ordinance declare the necessity of removing from the public streets or alleys of the City of Omaha the telegraph, telephone or electric poles, or wires thereon constructed or existing, said company shall, within sixty days from the passage of such ordinance, remove all poles and wires from said streets and alleys by it constructed, used or operated." It is claimed that this militates against the theory that the grant was in perpetuity and indicates, notwithstanding the state decisions before cited, that it was intended to endure only during the corporate existence of the grantee. We think the

suggestion is without force and that the reservation or qualification has no bearing upon the question whether the franchise was perpetual or for the life of the grantee. The term for which it was granted depends upon other considerations, for the reservation or qualification applies with equal force whether the term be one or the other. What is meant undoubtedly is that whenever there is public necessity for removing the poles and wires from the streets and alleys the council shall have power by ordinance to require that that be done. It is not claimed that the ordinance of 1908 was grounded upon any such necessity. The existence of one is not recited in the ordinance, is not alleged in the city's answer, and is not shown by the evidence. In this aspect, then, the case is like that in *Plattsmouth* v. *Nebraska Telephone Co.*, *supra*, where the Supreme Court of the State said (p. 466): "That the rights of the defendant in the streets of the city must yield to public necessity . . . is beyond question or dispute; but, having acquired a right in the streets, and having made expenditures on the strength of the grant extended by the city, the authorities are quite uniform that this right cannot be taken away in an arbitrary manner and without reasonable cause."

Concluding, as we do, that the franchise has not expired but is still subsisting, we come to the question whether it is limited to the distribution of electric current for lighting purposes or includes its distribution for power and heat.

This question has been elaborately discussed at the bar and in the briefs, and the record contains a large volume of evidence taken for the purpose of shedding light, as is said, upon what commonly was understood, when the ordinance was adopted, as "a general electric light business," that being the phrase used to designate the purpose for which the street franchise was granted. We do not find it necessary to enter upon an original consider-

ation of the meaning of that phrase or of the rules which ordinarily would be applicable in interpreting it.

Generally speaking, the practical interpretation of a contract by the parties to it for any considerable period of time before it comes to be the subject of controversy is deemed of great, if not controlling, influence. *Chicago* v. *Sheldon*, 9 Wall. 50, 54; *Insurance Co.* v. *Dutcher*, 95 U. S. 269, 273; *District of Columbia* v. *Gallaher*, 124 U. S. 505, 510; *School District* v. *Estes*, 13 Nebraska, 52; *State ex rel.* v. *Commissioners of Cass County*, 60 Nebraska, 566, 572. Although not strictly such, this rule is sometimes treated as a branch of the law of estoppel. Whether in a case permitting the exercise of an independent judgment we should apply it to franchise contracts such as the one here, we need not consider. In Nebraska, according to the settled course of decision in that jurisdiction, the rule is applicable to them.

In *State ex rel.* v. *Lincoln Street Railway Co.*, *supra*, there was involved the right of a street car company to use the streets of the city under a franchise irregularly obtained twenty years before. The irregularity consisted in the submission to the electors, under the statute before mentioned, of a blanket proposition covering all the streets instead of one specifying particular streets and the termini of the proposed lines. But, notwithstanding the irregularity, the railroad company, after a favorable vote upon the blanket proposition, proceeded at great expense and with the acquiescence of all concerned to the construction and operation of the road through several streets of the city, and continued thereafter in its operation without objection until the commencement of the suit, which was a proceeding in *quo warranto* in the name of the State, brought on the relation of a local officer. Although pronouncing the election irregular and holding that no right would have been acquired had the objection been seasonably made, the court said:

(p. 346) "So far as these lines have been constructed we think the defendant may claim an easement over the streets occupied, but the blanket license under which the defendant claims the right to extend its lines or to go upon other streets must be denied.

"As to the constructed lines, it would be manifestly unjust, not only to the defendant, but to the holders of its securities, to now oust it of rights and privileges which it and those through whom it takes title have been claiming and exercising for years with knowledge and acquiescence on the part of the state. The state, like individuals, may be estopped by its act, conduct, silence and acquiescence."

(p. 351) "Our conclusion is that the Lincoln Traction Company is the owner of the constructed lines of street railway of which it is now in possession, and that it has right and authority to maintain and operate the same, that its purchase of the lines formerly owned by the Lincoln Street Railway Company does not invest it with right or power to extend its lines, or to take possession of streets, or parts of streets, not now occupied by its completed lines, and that such extensions cannot be made, except by proceeding as required by law to obtain an additional franchise for that purpose and the consent of the electors of the city to such extensions as it may desire to make and such new lines as it may propose to construct."

*State ex rel.* v. *Citizens Street Railway Co.,* supra, was a similar case, in which the court said:

(p. 361) "The manner in which the question of the consent of the electors of the city was submitted was clearly irregular, and the affirmative vote cast thereon just as clearly conferred no power upon the railway companies to use the streets of the city beyond the time when that right should be questioned by some proper authority. But we are not prepared to say that, where the companies acted in good faith and expended their

money in the construction of lines under a supposed right to occupy the streets, and this right was not questioned until the bringing of the present action, they or those claiming under them should be ousted from the possession of such streets as are now occupied by their lines, and their property rendered worthless. Under the circumstances of this case, we do not think it would be a wholesome public policy to hold that, because of the irregularity which occurred in granting the right which the people had power to confer, such irregularity renders all proceedings under the vote void and of no effect.

(p. 362) "Upon the record before us, we are of opinion that the Citizens Street Railway Company is entitled to the use of the streets now occupied by it for street railway purposes so far as its lines are completed and in operation, that it has no right to extend its lines without further authority from the electors of the city."

The case of *Omaha & Council Bluffs Street Railway Co. v. City of Omaha*, 90 Nebraska, 6, decided in 1911, before the commencement of the present suit, is directly in point. It was a suit by the street railway company to enjoin the city from the enforcement of a paragraph or part of the resolution of 1908 which is here in controversy, the difference between the two paragraphs being that the first was directed against the Electric Company and required it to cease using the streets of the city in the transmission of electricity for power and heat, while the second paragraph was directed against the street railway company and required it to cease using the streets in the transmission of current for light, power and heat. The two cases are alike in all material respects, save that the street railway company had been for years and was furnishing electric current for light, power and heat as an incident to the use of electrical energy as a motive power in propelling its cars, and also that that company's incidental business had not been and was not as

extensive as that of the Electric Company. The suit was begun in a local court, which on final hearing granted a perpetual injunction against the enforcement of the resolution. The Supreme Court affirmed the decision below, subject only to a modification whereby the injunction would expire on the termination of the street railway company's street franchise, which was for a limited term of years. After reciting the facts the Supreme Court said (p. 13):

"We are therefore of opinion that the general finding of the district court in favor of the plaintiff and interveners was right, and should be adopted by this court. With this view of the case, we are not required to determine the question of the incidental powers of the street railway company. It is sufficient to say that the company supposed that it had the power under its charter to engage in the business of which the defendants now complain, and the city by its officers and agents assumed that it had such power, and by its acts not only permitted, but induced, the plaintiff to expend large sums of money, acquire valuable property, and enter into contract relations with the interveners and others to carry on that business. It follows that it would now be unjust and inequitable to permit the city to destroy plaintiff's property and business, which it has thus fostered and encouraged, without compensation, and also deprive the interveners of their contractual rights therein."

Then, after referring to and citing several cases, the court further said: "This is a well recognized rule of equity. . . . We are of opinion that the facts of this case bring the defendants within the rule of *State* v. *Lincoln Street R. Co.*, *supra*." 

In view of the facts in the present case, as before recited, these decisions of the Supreme Court of the State are conclusive upon the question of the right of the Trust Company to have the distribution of electric current for

power and heat treated as included within the franchise contract of 1884 while it continues in force. In other words, the Trust Company is entitled to insist upon a recognition and continuation, subject to all the qualifications inhering in the franchise, of all the rights conferred by the franchise ordinance as the same was interpreted in an actual practice by the Electric Company and the City prior to the resolution of 1908. But neither the Trust Company nor the Electric Company is entitled to make that construction a basis for enlarging or extending those rights, against the will of the City, or for enlarging or extending the purposes for which electric current may, through the use of the streets, be transmitted and supplied under the protection of the franchise.

A prior suit by the Electric Company against the City, largely but not entirely like the present, resulted in a decree against the Electric Company. The City now takes the position that that decree is conclusive upon the Trust Company as mortgagee. But the law is otherwise. The Trust Company's rights, and those of the bondholders whom it represents, were not acquired during or since that suit but long prior thereto, and the Trust Company was not a party to it. This being so, the Trust Company is free to maintain the present suit, unembarrassed by the decree in the other. *Keokuk & Western Railroad Co.* v. *Missouri,* 152 U. S. 301, 313; *Louisville Trust Co.* v. *Cincinnati,* 76 Fed. Rep. 296.

The decree is reversed, and the cause is remanded to the District Court with a direction to enter a decree against the enforcement of the resolution of 1908, in accordance with this opinion.

*Reversed.*

MR. JUSTICE HOLMES took no part in the consideration and decision of this case.