Barry **FREEDBERG** and Irving Freedberg, individually, and on behalf of and in the name and right of, Bellini Juvenile Designer Furniture Corp. and Barry Imports, Inc., Plaintiffs,

v.

Harris **LANDMAN**, N. Whitney Delgin, Cal–Linda Imports, Inc., Berg East Imports, Inc., Berg Furniture USA, Inc. and John Does "1 through 10," said names being false and fictitious, as the names of these additional Defendants are unknown at this time, Defendants.

No. 96–CV–3131 (JS).

United States District Court, E.D. New York.

July 16, 1996.

Steven L. Levitt, Robert S. Grossman, Levitt and Cohen, Williston Park, New York, for Plaintiffs.

Martin Domb, Hill, Betts & Nash, LLP, New York City, Jerold Fagelbaum, Fagelbaum & Heller LLP, Los Angeles, California, Fernando Koatz, Gleason & Koatz, New York City, for Defendants.

SEYBERT, District Judge.

### INTRODUCTION

This is an action brought under the Lanham Act, and also on the basis of diversity jurisdiction, that arises out of a shareholder dispute between the shareholders of Bellini Juvenile Designer Furniture Corp. ["Bellini Corp."]. Bellini Corp. is engaged in the business of marketing furniture for children under the Bellini trademark. The plaintiff shareholders, Barry and Irving Freedberg, who bring suit both individually and derivatively on behalf of Bellini Corp., allege that the defendants have violated their rights secured under both federal and state law through, *inter alia*, their participation in a scheme whereby Bellini look-alike furniture is being manufactured and marketed within the plaintiffs' exclusive territory as delineated in a shareholder agreement.

In addition to bringing suit against defendants Harris Landman and N. Whitney Delgin, both of whom are shareholders of Bellini Corp., the plaintiffs also have joined as defendants Cal–Linda Imports, Inc. ["Cal–Linda"] (a corporation of which defendant Landman is a principal), and Berg East Imports, Inc. and Berg Furniture USA, Inc. [hereinafter, collectively referred to as "Berg"], each of which is a New Jersey corporation. The plaintiffs allege that Berg is manufacturing and selling look-alike Bellini furniture within the plaintiffs' exclusive region without the plaintiffs' consent, and has become privy to certain trade secrets that may dilute the value of the Bellini trademark.

Pending before the Court is plaintiffs' motion for a preliminary injunction. If granted without modification, the preliminary injunction would enjoin defendants Landman, Delgin and Cal–Linda from disclosing any trade secrets or proprietary information, and from engaging in any marketing activity with respect to any furniture under the name Bellini, or any furniture resembling any line of furniture sold by Bellini franchises, within the plaintiff shareholders' exclusive territory. The territory at issue is essentially comprised, subject to certain exceptions, of those states situated east of the Mississippi River. The preliminary injunction also would enjoin defendant Berg from disclosing any trade secrets and proprietary information, and from manufacturing any furniture under the Bellini name, or any Bellini look-alike furniture.

Plaintiffs' application for a temporary restraining order pending this hearing was denied on June 28, 1996.

A hearing was held on this matter on July 10 and 11, 1996. This Opinion and Order constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND

Bellini Corp. is engaged in the nationwide distribution of baby and children's furniture through retail franchise outlets. Plaintiffs Barry and Irving Freedberg are 50% shareholders in Bellini Corp., while defendants Landman and Delgin hold the remaining 50% interest in Bellini. A shareholder agreement between these parties, executed in May 1985 [the "Shareholder Agreement"], differentiates exclusive geographical territories between the Freedbergs on the one hand, and Landman and Delgin on the other. Essentially, subject to certain exceptions,[1] the Freedbergs are provided the region east of the Mississippi River [the "Class A Territory"], while Landman and Delgin have been given the region west of the Mississippi River [the "Class B Territory"].

According to the plaintiffs, the Shareholder Agreement expressly prohibits Landman and Delgin from engaging in any Bellini operations, pursuing business opportunities, or selling or purchasing any furniture in or from the Freedbergs' exclusive geographical territory.

The plaintiffs allege that, notwithstanding this prohibition, Landman and Delgin, acting individually or through codefendant Cal–Linda, are presently engaged in Bellini business operations and pursuing business opportunities within the Freedbergs' exclusive geographical territory and also have purchased furniture from the Freedbergs' exclusive territory, all in contravention of the Shareholder Agreement and Landman and Delgin's fiduciary obligations to the plaintiffs.

Plaintiffs further allege that, in the furtherance of the above acts, defendants Landman and Delgin have disclosed Bellini's trade secrets and confidential proprietary information—including design and manufacturing specifications, pricing information and other data regarding its distinctive furniture—to defendant Berg, a manufacturer within the Freedbergs' exclusive territory, for the purpose of purchasing furniture from Berg. According to the plaintiffs, these actions will have the effect of permitting Berg to engage in direct competition with the Freedbergs and their corporate entity, Barry Imports,

1. These exceptions involve the inclusion of Arizona within the "Class A Territory," and the inclusion of Michigan within the "Class B Terri- tory." The shareholders subsequently amended the Shareholder Agreement to move Indiana into the "Class B Territory."

Inc.,[2] within the Freedbergs' exclusive territory.

The defendants, in turn, contend that the Shareholder Agreement applies solely to the sale of Bellini furniture at the *wholesale* level, exclusive of manufacturing, and that therefore Cal–Linda's purchase of furniture from Berg does not abridge this agreement. The defendants contend that the limited scope of the Shareholder Agreement is suggested by the fact that at the time of the agreement's execution, Bellini purchased all of its furniture from Europe. Thus, the defendants contend that the contracting parties did not intend the Shareholder Agreement to prohibit a shareholder's purchase of manufactured goods from another's territory. According to the defendants, such intent of the parties is demonstrated through their subsequent conduct whereby each group of shareholders purchased goods from the other's territory without securing prior written consent.

In addition, the defendants argue that the plaintiffs should not be entitled to injunctive relief because their delay of several weeks in bringing this lawsuit rebuts their assertion of irreparable harm.

Finally, the defendants contend that the plaintiffs come before this Court with unclean hands, having forced Cal–Linda to seek a new manufacturer of the Corso line of furniture that Berg is producing for it as a result of the Freedbergs' blatant mismanagement of Giani Enterprises, Ltd. ["Giani"]. The record shows, and the Court finds, that Giani is a corporation in which the parties had invested substantial funds for the purpose of manufacturing goods for both groups of shareholders.

## DISCUSSION

### I. Standards Governing Motion for Preliminary Injunction

■❘ "To obtain a preliminary injunction, a plaintiff must demonstrate: (1) *either* a likelihood that he will succeed on the merits of his claim, *or* that the merits present serious questions for litigation and the balance of hardships tips decidedly toward the plaintiff;

and (2) that without the injunction, he will likely suffer irreparable harm before the court can rule upon his claim." *Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.*, 25 F.3d 119, 122 (2d Cir.1994) (emphasis in original) (citing *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 135–36 (2d Cir.1992); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir. 1985)).

### II. Irreparable Harm

■ Turning to consider the above standard in reverse sequence, the Court finds that the plaintiffs succeed in establishing the requirement of irreparable harm. First, ¶ 8.11 of the Shareholder Agreement expressly provides that a violation of this agreement will cause irreparable injury to the other parties thereto, thereby entitling such other parties to injunctive relief. Although the Court is not conclusively bound by this provision in the exercise of its equitable powers, it nevertheless provides strong evidence of the parties' mutual understanding that an abrogation of the Shareholder Agreement would cause irreparable injury. The conclusion that money damages are inadequate to remedy plaintiffs' injuries is further reinforced in view of the difficulty in placing a price tag on lost trade secrets or goodwill, and the location of Berg within plaintiffs' territory.

The defendants argue that any harm that the plaintiffs may sustain would not be immediate, and in fact is inchoate, because pursuant to the Memorandum of Understanding between Cal–Linda and Berg, a six-month moratorium for the severance of their contractual relationship is operative upon notice of termination of the agreement between Cal–Linda and Berg. The Court rejects the defendants' contention, however, because it fails to consider the possibility of immediate harm that could ensue should Berg decide to breach its agreement with Cal–Linda and sell Bellini furniture within the Freedbergs' territory, and the potential profits to Berg resulting therefrom which could overcome its economic disincentive to breach. In addition, the Court finds without merit the defendants'

**2.** Barry Imports, Inc. is also a plaintiff in this   action.

contention that plaintiffs' delay of approximately six weeks in bringing this action counsels against a finding of irreparable harm. Thus, *provided that plaintiffs succeed in making the necessary showing with respect to the merits of their claims,* the plaintiffs will be entitled to injunctive relief.[3]

### III. Analysis of the Merits

#### A. *The Ambiguous Agreement*

The parties' contentions concerning the merits of plaintiffs' claims center around the Shareholder Agreement. At the heart of this controversy is ¶ 2.10, which provides as follows:

> 2.10 The parties hereto agree not to *wholesale* Bellini furniture to any person or entity (i) which is not doing business as a Bellini franchisee or (ii) at least 50% of the equity in which is not owned by the Company or any of the Shareholders *and each agrees to obtain the prior written consent of the other parties prior to the sale of goods in, or purchase of goods from, the other's Territory.*

Shareholder Agreement ¶ 2.10 (emphasis added). The poor draftsmanship of this paragraph is quite apparent. The defendants argue that the consent requirement imposed by this paragraph applies only to the sale of Bellini furniture at the *wholesale* level by the shareholders or their controlled entities. The plaintiffs, in turn, contend that the defendants' construction of this paragraph is incorrect because such interpretation fails to give effect to the phrase near the end of this paragraph which requires the other parties' written consent "prior to the ... purchase of goods from [ ] the other's Territory." *Id.*

Pursuant to ¶ 8.9 of the Shareholder Agreement, New York law governs the determination of the parties' rights under this agreement. *See* Shareholder Agreement ¶ 8.9 ("This Agreement shall be construed in accordance with and governed by the laws of the State of New York applicable to agreements made and to be performed entirely within the State of New York without giving effect to the conflict of law principles thereof."). Under the well-established principles of New York contract law, the parol evidence rule generally bars the introduction of extrinsic evidence to establish the parties' intent in entering into a written agreement which was intended to constitute a final agreement between the parties.

An exception to the parol evidence rule arises, however, where the meaning of a word or phrase is *ambiguous,* i.e., subject to at least two conflicting reasonable interpretations. Where the meaning of a word or phrase is ambiguous, a court may look beyond the "four corners" of the agreement and "examine the record as a whole in an attempt to interpret the agreement so as to effectuate the intent of the parties." *Bank of New York v. Amoco Oil Co.,* 35 F.3d 643, 661 (2d Cir.1994) (citations omitted); *see In Time Prods., Ltd. v. Toy Biz, Inc.,* 38 F.3d 660, 665 (2d Cir.1994) (A district court may consider extrinsic evidence to resolve an ambiguity in a contract.); *Schurr v. Austin Galleries,* 719 F.2d 571, 574 (2d Cir.1983) (where the language of an agreement is ambiguous, consideration of surrounding circumstances is appropriate); *Ostman v. St. John's Episcopal Hosp.,* 918 F.Supp. 635, 645 (E.D.N.Y.1996); *Monaghan v. SZS 33 Assocs.,* 875 F.Supp. 1037, 1043 (S.D.N.Y.1995) (citing *Mellon Bank, N.A. v. United Bank Corp.,* 31 F.3d 113, 116 (2d Cir.1994)), *aff'd,* 73 F.3d 1276 (2d Cir.1996). As a general rule of construction, "[w]here one interpretation is broader than another, courts should not apply the broader interpretation absent a clear manifestation of intent." *Bank of New York,* 35 F.3d at 662 (citations omitted). In addition, "[t]he parties' interpretation of the contract in practice, prior to litigation, is compelling evidence of the parties' intent." *Ocean Transport Line v. American Philippine Fiber Indus.,* 743 F.2d 85, 91 (2d Cir.1984) (citing *Old Colony Trust Co. v. City of Omaha,* 230 U.S. 100, 118, 33 S.Ct. 967, 972, 57 L.Ed. 1410 (1913)).

In the instant case, the defendants argue that ¶ 2.10 of the Shareholder Agree-

---

3. As is subsequently discussed, plaintiffs fail to make the requisite showing concerning the mer-

its of their claims.

ment may be construed to apply solely to the sale of Bellini furniture at the wholesale level. Under this construction, the purchase of goods from Bellini's territory, for use in the *retail* sale of Bellini furniture, or for purposes of obtaining manufactured goods that are not directly related to the wholesale marketing of such goods, would not abridge the agreement. The second portion of ¶ 2.10 therefore would be regarded as a clarification of the first portion of this paragraph,[4] and serve the distinct function of specifying the limited circumstances (i.e., upon prior written consent) under which one group of shareholders may conduct business in the other's territory.

On the other hand, the plaintiffs urge a construction of the agreement under which plaintiffs' prior written consent to the purchase of goods from plaintiffs' territory must be secured in *all* circumstances. According to the plaintiffs, a construction to the contrary would render the second portion of ¶ 2.10 redundant of the first portion of that paragraph, and would fail to give effect to other portions of the Shareholder Agreement, most prominently, ¶¶ 2.1 and 2.3. Paragraphs 2.1 and 2.3, however, expressly address the shareholders' *"retail* furniture business, including franchising," *see id.* ¶¶ 2.1 and 2.3 (emphasis added), and therefore are of little help in guiding the Court's interpretation of ¶ 2.10.

The Court regards each of the parties' conflicting interpretations of ¶ 2.10 to be reasonable, and concludes that this paragraph is ambiguous when viewed in the context of the Shareholder Agreement taken as a whole. Indeed, the general subject matter addressed by ¶ 2.10 would appear to be the sale of Bellini furniture at the "wholesale" level; the term "wholesale," unfortunately, is not defined in the Shareholder Agreement. Accordingly, the Court now turns to examine the extrinsic evidence presented at the hearing for purposes of evaluating the intent of the parties at the time of contracting.

### B. *The Parties' Intent in Contracting*

The Court has carefully considered all of the evidence in the record in evaluating the parties' intent in contracting with respect to the meaning of ¶ 2.10. Upon consideration of the record, and based upon its resolution of its witness-credibility evaluations decisively in favor of the defendants, the Court finds that the contracting parties did not intend to prohibit either group of shareholders from purchasing goods from a manufacturer situated in the other's territory. The Court regards this determination to preclude not only a finding of a likelihood of success on the merits, but also a determination that the merits present serious questions for litigation.[5] Several reasons lead the Court to this determination.

First, the Court finds that, at the time that they executed the Shareholder Agreement, the shareholders did not mutually assent to a prohibition against the purchase of manufactured goods from the other shareholders' territory. The Court credits defendant Harris Landman's testimony to this effect, and finds it to be consistent with the uncontradicted evidence presented at the hearing which establishes that, at the time of contract formation, Bellini Corp. imported all of its furniture from Europe. The Court is mindful of plaintiff Irving Freedberg's testimony at the hearing that, when the Shareholder

---

**4.** This technique is often employed in the Internal Revenue Code.

**5.** For completeness of record, the Court also expressly finds that the balance of hardships tips decidedly towards the defendants. Although the Court regards Harris Landman's numerical quantification of the financial injury that Cal–Linda stands to suffer through the discontinuation of the Corso line of furniture to have been substantially overstated, the Court does not attribute this error to any willful misrepresentation on the part of Mr. Landman, and further finds that the quantum of financial injury to the defendants suggested by *plaintiffs'* counsel exceeds the non-speculative financial injury, if any, likely to be sustained by the plaintiffs as a result of the denial of injunctive relief.

In addition, the Court expressly finds the balance of hardships to weigh in favor of defendant Berg vis-a-vis the plaintiffs in view of the substantial expenditures that Berg has made, through both the purchase of raw materials and the costs allocable to labor, in connection with its receipt of orders from Cal–Linda to manufacture the Corso line of furniture. If a preliminary injunction were issued, these expenditures would constitute a substantial uncompensated cost to Berg.

Agreement was executed, he had contemplated that, at some point in the future, Bellini furniture would be manufactured in the United States. Nevertheless, the Court finds that this contemplation on the part of Mr. Freedberg was at best an unarticulated aspiration that was not discussed in the parties' negotiations concerning the Shareholder Agreement. Therefore, there was no meeting of the minds, i.e., no mutual assent, concerning the establishment of a prohibition against the purchase of goods from a manufacturer situated in the other's territory. To the extent that Mr. Freedberg's testimony may suggest a contrary conclusion, the Court finds such testimony not to be credible. In this regard, the Court observes that on several occasions during his cross-examination, Mr. Freedberg testified that he had great difficulty remembering events material to this litigation that occurred approximately ten years ago. The Court finds it implausible that, notwithstanding Mr. Freedberg's general failure of memory, he was able to remember with uncanny accuracy the specific circumstances of the parties' negotiations in 1985 with respect to this aspect of the Shareholder Agreement.

Second, the Court regards the Freedbergs' course of conduct in permitting Cal–Linda to purchase manufactured goods from Long Island Woodworking, an independent New York-based furniture manufacturer, to provide strong evidence that the parties, themselves, did not regard their agreement to prohibit the purchase of manufactured goods from the other's territory. The uncontradicted evidence shows that the Freedbergs did not provide prior written consent to the West Coast shareholders prior to Cal–Linda's fully-disclosed purchase of manufactured furniture from Long Island Woodworking. Had the parties intended their agreement to proscribe this conduct, one would expect an objection to have been made by the Freedbergs at that time.

Third, the shareholders' formation of Giani for the purpose of manufacturing Bellini furniture also suggests, to some extent, the absence of any intent on the part of the contracting parties to prohibit the purchase of manufactured goods from the other shareholders' territory. The record fails to provide any credible evidence to suggest that, during the parties' negotiations concerning the formation of Giani, they addressed the possibility that the West Coast shareholders' conduct and participation therein would contravene ¶ 2.10 of the Shareholder Agreement. Had the parties intended ¶ 2.10 to proscribe said purchase of manufactured goods, this would have provided the Freedbergs with a substantial bargaining chip which they could have used to their advantage in negotiating Giani's capital structure and profit-and-loss sharing ratios. The failure of the Freedbergs to use this bargaining chip in their negotiations with respect to Giani provides an indication that they did not believe this enhanced bargaining position to exist.

Fourth, the Court finds the plaintiffs' construction of ¶ 2.10 to be belied by Irving Freedberg's testimony, on cross-examination, that in 1985, at the time that the Shareholder Agreement was executed, he was not concerned if franchise stores from the West Coast purchased Bellini furniture from franchise stores located in the East Coast, and vice-versa. The absence of such concern provides additional support for the defendants' contention that the contracting parties, in entering into the Shareholder Agreement, did not contemplate any prohibition against the purchase of manufactured goods from the other shareholders' territory.

Finally, the Court finds additional circumstantial evidence of the contracting parties' intent with respect to ¶ 2.10 to be amply provided through the Freedbergs' own purchase of manufactured goods, some years later, from Jasper Plastics, an independent company that is situated in the "Class B Territory." In this regard, the Court finds unpersuasive Mr. Freedberg's testimony that he did not believe his actions to be in contravention of ¶ 2.10 because he was merely purchasing handles. The language of ¶ 2.10 speaks of the requirement of procuring written consent from the other shareholders prior to the "purchase of goods [ ] from the other's Territory." Shareholder Agreement ¶ 2.10. To the extent that Mr. Freedberg seeks to escape his interpretation of ¶ 2.10 by distinguishing the purchase of handles from

the purchase of larger pieces of furniture, the Court finds Mr. Freedberg's testimony to be unpersuasive.

In sum, therefore, the Court finds that the contracting parties, in entering into the Shareholder Agreement, did not intend to prohibit either group of shareholders from purchasing manufactured goods from the other's territory, provided that no other provision of the Shareholder Agreement was violated. Because the Court, having extensively reviewed the Shareholder Agreement and the other evidence in the record, is unable to find any violation of the Shareholder Agreement—or, for that matter, any violation of the rights under federal and state law that plaintiffs assert in this motion [6]—plaintiffs' application for a preliminary injunction must be denied.[7]

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for a preliminary injunction is DENIED in its entirety.

SO ORDERED.

---

**6.** The Court has considered all of plaintiffs' remaining arguments and finds them to be without merit. The Court notes that, during his closing argument, plaintiffs' counsel conceded that the issue of trademark infringement is not before the Court on this motion for a preliminary injunction. In any event, the Court expressly finds that the plaintiffs have failed to present any credible evidence to establish that Cal–Linda, Landman or Delgin have improperly disclosed any of Bellini's trade secrets and confidential proprietary information, assuming (without deciding) that any putative trade secrets or confidential proprietary information are entitled to legal protection under federal or state law.

For completeness of record, the Court also finds, and so holds, that the Freedbergs' conten-

tion, as alleged in their complaint, that Landman and Delgin breached their fiduciary duties to them, is without merit. Aside from the other evidence in the record, this result is reinforced by the Shareholder Agreement itself. Specifically, ¶ 7 of the Shareholder Agreement expressly provides that the shareholders are not to be regarded as partners, and further delineates the absence of a fiduciary relationship between the shareholders. *See* Shareholder Agreement ¶ 7.

**7.** The Court reaches the result herein without factoring in any consideration of the defendants' post-hearing evidentiary submissions. The Court notes that, in any event, these post-hearing submissions would not alter any of the Court's factual findings or conclusions of law.