**In re ANTHRACITE COAL ANTITRUST LITIGATION.**

**This Document Relates to: Wilkes-Barre Steam Heat Company**

**Steven J. Hartz, Trustee in Bankruptcy for Neast & Co., Inc.**

**Colonial Fuel Company.**

**MDL No. 293.**

**Civ. Nos. 76–1500, 77–699 and 77–1049.**

United States District Court,
M. D. Pennsylvania.

May 22, 1980.

Victor Wright, Abraham C. Reich, Fox, Rothschild, O'Brien & Frankel, H. Laddie Montague, Jr., Daniel Berger, Berger & Montague, Philadelphia, Pa., Arnold Levin, Adler, Barish, Daniels, Levin & Creskoff, Philadelphia, Pa., for plaintiffs' Settlement Committee.

Richard P. McElroy, Thomas J. Elliott, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for claimant.

## OPINION

MUIR, District Judge.

On October 14, 1978, the Court approved a notice to be sent to all potential claimants which required the claimants to file claims on or before December 20, 1978. On August 10, 1979, a notice was mailed to all claimants who had filed a claim with the Plaintiffs' Settlement Committee (Committee). A notice informed each claimant of the Committee's recommendation with regard to his claim. Those claimants who did not accept the Committee's recommendation were given until September 12, 1979 in which to file a statement with the Court that they opposed the Committee's recommendation. All objections to claims were scheduled to be heard at hearings on October 15, 1979 before United States Magistrate Durkin. On November 9, 1979, Magistrate Durkin filed a report with the Court setting forth his recommendation with regard to the claims presented to the Committee. Bethlehem Steel Corporation (Bethlehem) filed objections to the Magistrate's report on November 27, 1979 accompanied by a brief. A brief in opposition to the claims of Bethlehem was filed by the Committee on December 6, 1979. On January 2, 1980, the Court directed the Committee to file within 20 days of the date of that order a document indicating the dates on which a proof of claim form defining the industrial purchaser class was first presented to the Court and to Bethlehem. The Committee was also directed to discuss whether Bethlehem had waived its right to raise its claims before this Court. Bethlehem was ordered to file a response to the Committee's reply within 20 days of that filing. On January 14, 1980, the Committee filed a supplemental statement with the Court. Bethlehem filed an affidavit of its attorney in response to the Committee's position on January 31, 1980. On March 27, 1980, the Settlement Committee was directed to supplement the record by indicating whether Bethlehem

Steel was included on the mailing list utilized to send out the proof of claim forms. On April 7, 1980, the Committee filed a response.

As noted by Magistrate Durkin, Bethlehem is the only industrial class claimant which is before the Court. Bethlehem has submitted a proof of claim in which it contends that between the years 1961 and November, 1974, it purchased 5,767,328 tons of anthracite coal from various sources. While there is a dispute as to the precise amount of the purchases, that issue is not now before the Court. Rather the issue before the Court is whether Bethlehem which purchased defendants Greenwood Stripping Corporation (Greenwood) and Lehigh Navigation-Dodson Company (LND) in December of 1974, and thus in a sense is both a Plaintiff and a Defendant, should be entitled to recover on its claims.

On June 12, 1978, the Court ordered a hearing on September 25, 1978 on a proposed settlement between Plaintiffs and all Defendants except Glen Burn Colliery, Inc. (Glen Burn) and Farragut Anthracite Company (Farragut). The industrial class established in that order did not exclude affiliates although the dealer class did. The notice of the class action and proposed settlement thereof sent to dealers and to industrial purchasers filed June 12, 1978 did not state that affiliates of Defendants in the industrial purchaser class were excluded although such an exclusion was made in the dealer class. On July 19, 1978, the Court ordered that the September 25, 1978 hearing also consider the proposed settlement with Glen Burn and Farragut. Like the order and notice of June 12, 1978, the order of July 19, 1978 excluded affiliates from the dealer class but not from the industrial class. Bethlehem was sent notice of the proposed settlement as a customer of at least one Defendant. As noted by the affidavit of Joan A. Zubras, filed September 23, 1978, the list of persons to whom notice was sent was overinclusive.

On September 25, 1978, this Court conducted a hearing on the fairness and reasonableness of the proposed settlement of the above-captioned cases. As noted above, the definition of industrial purchaser class set forth in the settlement agreement and in the notice of hearing of the settlement hearing did not exclude from the definition of industrial purchaser class Plaintiffs who had Defendants as affiliates. On September 29, 1978, the Court issued an opinion concluding that the proposed $4,605,000 settlement was fair and reasonable. It appears from the documents submitted by the parties that on or about October 10, 1978, the proposed proof of claim form was given to counsel for Bethlehem Steel for his comments. The proof of claim form was submitted to the Court on October 11, 1978. On October 14, 1978 the Court issued an order approving the proposed settlements between the parties, dismissing the complaints of Plaintiffs with prejudice barring prosecution of activities referred to in the complaints against Defendants and others including Bethlehem, and dismissing the actions with prejudice. That same order defined dealer settlement class as excluding affiliates of Defendants. The definition of industrial purchaser class contained no such exclusion. On that same day, the Court approved a notice to be sent to class members of approval of the settlements and a proof of claim form. The proof of claim form *for the first time* altered the definition of the industrial purchaser class to provide in part that to be a member of the industrial purchaser settlement class, the purchaser could not be a defendant nor an affiliate, subsidiary, or co-conspirator of any defendant. Since Bethlehem had purchased LND and Greenwood in December of 1974, it is the position of the Committee that Bethlehem is barred from recovery.

Bethlehem had one definite opportunity to object to the change in definition and that was in the short time period between Tuesday, October 10, 1978 and Saturday, October 14, 1978 when the proof of claim form was approved by the Court. The Court does not recall the change in language of the proof of claim form being drawn to its attention. Furthermore, the Court is not convinced that Bethlehem had an adequate opportunity to challenge the

proof of claim form. Bethlehem takes the position that the change in language was never brought to its attention. But even if it had been brought to Bethlehem's attention, Bethlehem had at most three working days in which to challenge the new language in the proof of claim form and in all likelihood had only one or two days in which to do so. Although an additional hearing was held on November 27, 1978, that hearing was scheduled for consideration of the allocation of the settlement fund between the dealer and industrial class and of reasonable attorneys' fees and expenses for Plaintiffs' counsel. It was not an appropriate time to raise the issue of the definition of industrial class contained in the proof of claim form.

As noted by the Magistrate, the Committee has taken the position that Bethlehem has been a substantial contributor to the settlement fund either directly or through its subsidiaries Greenwood and LND and to permit it to gain the benefit of illegal profits which its subsidiaries obtained by allowing it to recoup part of the money it paid in settlement would thwart the policy of vigorous private enforcement of the antitrust laws. Furthermore, in its supplemental statement filed on January 14, 1980, the Committee contends that Bethlehem waived its right to object to the language in the proof of claim form. The Committee has also noted that Fed.R.Civ.P. 23(a)(3) requires that claims of class members be typical such that they are not antagonistic to those of other members of the class. The Committee argues that Bethlehem is not a typical class member since it and its subsidiaries Greenwood and LND have vigorously opposed the Plaintiffs' assertion of unlawful conduct. Also, the Committee has pointed out that the order of October 14, 1978 which approved the settlements provided that Plaintiffs and all class members were barred from prosecuting any individual or class claims which were based upon activities of a number of individuals and entities, including Bethlehem Steel so that Bethlehem is different from most Plaintiffs.

It is the Court's view that the Committee's argument regarding Bethlehem's possible inclusion as a defendant in one of the actions is of no moment. The fact remains that Bethlehem was not so named. Naming Bethlehem as a defendant might have been determined by the Court to be without basis. It is not a fact which actually occurred. As to the concern of the Committee that allowing Bethlehem to recoup its losses would thwart the antitrust laws, the Court notes that barring Bethlehem from recovering will doubly punish it for the actions of its subordinates. First, it will be required to pay for the sins of its affiliates and then will be barred from recovering for the injury it has suffered by the actions of its subsidiaries which prior to December of 1974 were wholly independent from it.

The Committee argues that Fed.R.Civ.P. 23 is based on a requirement of typicality. They contend that the typicality requirement requires the class members and representatives not have antagonistic interests such that they will all seek to prove the same facts. See Mersay v. First Republic Corporation of America, 43 F.R.D. 465, 468 (S.D.N.Y.1968); 7 Wright & Miller Federal Practice and Procedure, § 1764. Because Bethlehem and its subsidiaries Greenwood and LND vigorously contested Plaintiffs' assertion of unlawful conduct, the committee submits that Bethlehem cannot be a member of the settlement class. It is the view of the Court that this claim must also be rejected. The typicality requirement is such that the named representative of the class cannot have interests antagonistic to those of the rest of the members of the class. Bethlehem did not represent the class but rather was a member of it. It is not clear that Bethlehem's interests are antagonistic to those of the rest of the class except to the degree that they may have tried to reduce the contribution of Greenwood and LND to the settlement. Most important, however, is the failure of the Plaintiffs to prevent or object to Bethlehem's inclusion in the class in that under the definition of industrial purchaser utilized by the Court, Bethlehem would have been covered by that class.

The Committee also notes that Bethlehem was included as one of the parties against whom further action was barred by the settlement agreements. The Court is not persuaded that this shows that Bethlehem should not be permitted to recover. Since Bethlehem is represented by the same counsel as LND and Greenwood, Bethlehem may have only been trying to be careful in protecting itself before deciding to remain as a member of the class. The Committee has also indicated that it has no recollection of the statements by counsel which were allegedly made during settlement negotiations that Bethlehem intended to file a claim. The Committee takes the position that because Bethlehem sought to be released from any claims by the class, such a statement by counsel is of no moment and that even if such a statement had been made it would have been assumed to have been made in jest. A factual dispute appears to exist on this issue. Its resolution does not appear to be significant. However, the Court does note that great pains were taken to define the dealer class as excluding affiliates. It is not at all clear to the Court why the definition of industrial class purchasers did not also exclude such affiliates.

In its brief filed December 6, 1979, the Committee refers to the report of a master in *City of Detroit v. Grinnell Corporation*, No. 68 Civ. 4026 (S.D.N.Y.1975), where a definition of the class utilized in the settlement agreement did not exclude defendants from participation in the settlement. In *City of Detroit* the entity seeking to recover a portion of the settlement fund was actually a defendant in the litigation. Thus, that case is distinguishable from the present one at least in the sense that Bethlehem has not been named as a defendant in any of these actions. Although the special master appointed by the District Court in *City of Detroit* indicated that no precedent had been found which dealt with an action in which a defendant who sought to defeat the action and contributed to the settlement fund now sought to be a claimant, he concluded that it offended "one's sense of logic" to permit the defendant to participate in

the fund. Master's report at p. 9. Although the City of Detroit vs. Grinnell action has some persuasiveness, its position must be rejected. It does not appear to the Court to be inconsistent that Bethlehem would have contributed to the settlement fund since by merging with Greenwood and LND it became liable for the debts of its subsidiaries. As to the alleged opposition of Bethlehem to the claims against Greenwood and LND, it appears to the Court that that was only logical since Bethlehem would be liable for any judgment entered against Greenwood and LND.

The Committee also notes that Bethlehem did not complain of the definition contained in the proof of claim form in December of 1978 when Bethlehem had completed such proof of claim forms. The Court is not persuaded that this requires rejection of Bethlehem's claim since Bethlehem may not have noticed the change in the definition in the claim form or if it did notice it, may have expected that such an issue would be raised at the time the proof of claim forms were considered by the Court.

■ Although the arguments of the Committee are to some extent persuasive, it is the view of the Court that Bethlehem should not be barred from recovery because of the activities of its subsidiaries. Under the definitions utilized until October 14, 1978 when the Court approved the proof of claim form, Bethlehem was clearly a member of the industrial purchaser class. The change in definition in the proof of claim form was not brought to the Court's attention. Furthermore, Bethlehem did not in the Court's view have an adequate opportunity to alert the Court of the change in the language even assuming that Bethlehem itself had been aware of the change in the language.

■ Magistrate Durkin's report of November 9, 1979 indicates at page 20 that the specific claim of Bethlehem for 5,767,328 tons of anthracite coal is deficient in that purchases by suppliers were not detailed. However, counsel for the Committee has represented that the deficiency is an issue

not presently before the Court and that Bethlehem apparently will cure this deficiency if it is deemed to be a member of the industrial class. Because the Court has determined that Bethlehem is a member of the industrial class, this action will be remanded to the Magistrate and the parties will be given an opportunity to cure the deficiency in the claim.