**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LUCIAN B. COX, III, on his behalf
and on behalf of all the others
similarly situated,
<u>Plaintiff-Appellee,</u>

v.

PARYANK REMESH SHAH; UPS
CORPORATION,
<u>Claimants-Appellants,</u>

and

EUGENE D. DERRY; ROSS COSMETICS
DISTRIBUTION CENTERS,
INCORPORATED; ROGER M.
ROSENBERG; BARRY A. BLOOMFIELD;
SHASHIKANT S. SHETH; MICHAEL E.

EMERY; EUGENE H. KARAM; JOHN M.
WATERS; ROSS FREITAS; MEHENDRA
SHETH; KIRIT SHETH; JAMNADAS
SHETH; VIRENDRA SHETH; JAYESH
SHETH; S&J PERFUME COMPANY;
STARION INTERNATIONAL LIMITED,
<u>Defendants,</u>

and

PEARL LEVY; HAIM RONAN; THOMAS
M. KARAM; HAROLD J. KARAM,
Profit Sharing Plan; HAROLD J.
KARAM; RICHARD J. KARAM;
MARGARET KARAM; PRISCILLA W.
KARAM; DANIEL J. KARAM; GLADYS
SAFER; MELISSA FREITAS; GEORGE

No. 98-1357

O'LEARY; RAMESH DOSHI; JOSEPH
KUNZ; FRED K. MARLER; EDUARDO
HERMOSILLA; FRANCES J. HARRELL; B.
PETER SALEH; JIMMY J. NASSOUR,
Claimants,

WENDELL G. CANTRELL,
Movant.

LUCIAN B. COX, III, on his behalf
and on behalf of all the others
similarly situated,
Plaintiff-Appellee,

v.

GEORGE O'LEARY,
Claimant-Appellant,

and

EUGENE D. DERRY; ROSS COSMETICS
DISTRIBUTION CENTERS,

INCORPORATED; ROGER M.
ROSENBERG; BARRY A. BLOOMFIELD;
SHASHIKANT S. SHETH; MICHAEL E.
EMERY; EUGENE H. KARAM; JOHN M.
WATERS; ROSS FREITAS; MEHENDRA
SHETH; KIRIT SHETH; JAMNADAS
SHETH; VIRENDRA SHETH; JAYESH
SHETH; S&J PERFUME COMPANY;
STARION INTERNATIONAL LIMITED,
Defendants,

and

No. 98-1378

2

PARYANK REMESH SHAH; PEARL
LEVY; HAIM RONAN; THOMAS M.
KARAM; HAROLD J. KARAM, Profit
Sharing Plan; HAROLD J. KARAM;
RICHARD J. KARAM; MARGARET
KARAM; PRISCILLA W. KARAM;
DANIEL J. KARAM; GLADYS SAFER;
MELISSA FREITAS; RAMESH DOSHI;
JOSEPH KUNZ; UPS CORPORATION,
Claimants,

WENDELL G. CANTRELL,
Movant.

LUCIAN B. COX, III, on his behalf
and on behalf of all the others
similarly situated,
Plaintiff-Appellee,

v.

GLADYS SAFER,
Claimant-Appellant,

and                                                   No. 98-1739

EUGENE D. DERRY; ROSS COSMETICS
DISTRIBUTION CENTERS,
INCORPORATED; ROGER M.
ROSENBERG; BARRY A. BLOOMFIELD;
SHASHIKANT S. SHETH; MICHAEL E.
EMERY; EUGENE H. KARAM; JOHN M.
WATERS; ROSS FREITAS; MEHENDRA
SHETH; KIRIT SHETH; JAMNADAS

3

SHETH; VIRENDRA SHETH; JAYESH
SHETH; S&J PERFUME COMPANY;
STARION INTERNATIONAL LIMITED,
Defendants,

and

PARYANK REMESH SHAH; PEARL
LEVY; HAIM RONAN; THOMAS M.
KARAM; HAROLD J. KARAM, Profit
Sharing Plan; HAROLD J. KARAM;
RICHARD J. KARAM; MARGARET
KARAM; PRISCILLA W. KARAM;
DANIEL J. KARAM; MELISSA FREITAS;
GEORGE O'LEARY; RAMESH DOSHI;
JOSEPH KUNZ; UPS CORPORATION,
Claimants,

WENDELL G. CANTRELL
Movant.

Appeals from the United States District Court
for the District of South Carolina, at Spartanburg.
G. Ross Anderson, Jr., District Judge.
(CA-92-1706-7-13)

Argued: January 28, 1999

Decided: July 13, 1999

Before LUTTIG, WILLIAMS, and MICHAEL, Circuit Judges.

_____


Affirmed in part and vacated and remanded in part by unpublished
per curiam opinion.

_____

4

**COUNSEL**

**ARGUED:** Robert Y. Knowlton, SINKLER & BOYD, Columbia, South Carolina for Appellants Shah and UPS; Donald Fred Schneider, FELTMAN, KARESH, MAJOR & FARBMAN, L.L.P., New York, New York, for Appellants O'Leary and Safer. Arthur Camden Lewis, LEWIS, BABCOCK & HAWKINS, L.L.P., Columbia, South Carolina, for Appellee. **ON BRIEF:** Anne D. Zuckerman, LEWIS, BABCOCK & HAWKINS, L.L.P., Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Claimants-Appellants George J. O'Leary, Gladys M. Safer, Paryank Ramesh Shah, and UPS Corporation[1] appeal their exclusion by the district court from a settlement fund resulting from a class action securities fraud lawsuit filed against Ross Cosmetics Distribution Centers, Inc., certain officers and directors, and certain nonemployee related persons and entities (collectively the Defendants). We affirm the district court's denial of O'Leary's claim based upon our conclusion that it did not clearly err in finding that he was an "affiliate" under the settlement agreement entered into by the Plaintiffs and Settling Defendants. We vacate the district court's denial of the claims of Safer, Shah, and UPS based upon our concern that the district court may have erred in assigning too broad a definition to "affiliate."

_____

[1] UPS Corporation, which is not affiliated with United Parcel Service, was formed in December 1991 by Shah for "personal financial reasons." (J.A. at 627.) Shah and his wife are the equitable owners of the stock. Shah's wife did not participate in UPS's decisions to purchase shares of Ross Cosmetics.

5

Because we cannot discern from the record what definition of "affiliate" the parties to the settlement agreement adopted, we remand this case to the district court with instructions to hold an evidentiary hearing to make that determination and to apply this resulting definition to the claims of Safer, Shah, and UPS.

I.

Between roughly June 12 and July 1, 1992, thirteen lawsuits were filed in the United States District Court for the District of South Carolina against Ross Cosmetics Distribution Centers, Inc. (Ross Cosmetics or the Company), certain directors and officers of the Company, and certain nonemployee related persons and entities. By Order of September 8, 1992 (the September 8 Order), the district court consolidated all of these actions and appointed the law firms of Cohen, Milstein, Hausfeld & Toll and Zwerling, Schachter & Zwerling as counsel for the plaintiff class (Co-Lead Counsel). The September 8 Order also directed the Plaintiffs[2] to file one Consolidated Amended Complaint. This Complaint was filed on October 8, 1992, on behalf of all persons who had purchased shares of Ross Cosmetics between June 25, 1991 and June 11, 1992, (the class). The Complaint alleged violations of Sections 10(b), 20(a), and 14(a) of the Securities Exchange Act of 1934 (the Exchange Act), of Rules 10b-5 and 14a-9 promulgated thereunder, see 17 C.F.R.§§ 240.10b-5 and 240.14a-9, and of South Carolina state common law.[3]

_____

[2] The Plaintiffs are Lucian B. Cox, III, Samuel Spielberg, Vincent Tortorella, Walter Poppe, Bruce R. Johnstone, James Bryant, Nicholas Sabbatini, Loretta Kull, Filomena and James Bella, Michael and Rhoda Galub, Albert Karp, Florence Karp, Limor, Inc., Michael Gavelek, William Morris, Wendell G. Cantrell, Hugh H. Brantley, Oren R. Judy, Jr., Billy L. Painter, John and Charlotte Hall, Willie H. and Anna S. Bridges, Douglas A. Churder, Brenda and Walter Dean, Johnny Joseph Green, Bo Greer and Pamela Lee Harris, Joseph Daniel Johnson, Terry Millwood, Susan Potter, Mary Lou Tye, Ceres Vandiver, and Vicki Wilson. (Stipulation of Settlement ¶ A.27.)

[3] The factual basis of the claims was that a group of individuals (the Core Sheth Families), who owned the company that was the sole supplier of fragrances and perfumes to Ross Cosmetics, secretly and in violation of the federal securities laws gained a majority of Ross Cosmetics stock

On August 28, 1993, the Plaintiffs and the Settling Defendants[4] entered into a Stipulation of Settlement (the Stipulation), which provided for payment of $9.5 million to the class. Pertinent portions of the Stipulation defined the class in the following manner:

> 4. "Class" shall mean all Persons who purchased the common stock of Ross Cosmetics during the Class Period [June 25, 1991 through June 11, 1992, inclusive]. Excluded from the Class are the Excluded Persons (defined below in ¶A.16). Also excluded from the Class are those individuals who exercise rights of exclusion pursuant to the Hearing Order.
>
> . . . .
>
> 16. "Excluded Persons" shall mean the Defendants and Ernst & Young, members of their immediate families, any Person in which any Defendant or Ernst & Young has a controlling interest or which is related to or affiliated with, and the legal representatives, heirs, successors-in-interest or assigns of all of the foregoing.

(Stipulation of Settlement ¶¶ A.4, A.16). Nowhere in the Stipulation

_____

by the commencement of the class period and that the Defendants shielded this fact from public view. The Complaint alleges that the Defendants created the illusion that Ross Cosmetics was a well-managed, independent, financially viable company owned by a majority of unaffiliated stockholders that was experiencing tremendous growth and profitability when in reality it was a puppet of the Core Sheth Families that lacked the economic viability to operate but for the affiliation with the Core Sheth Families. As a result of this alleged fraud, the Plaintiffs alleged that they paid artificially inflated prices for Ross Cosmetics common stock.

[4] The Settling Defendants are Michael E. Emery, Eugene H. Karam, John M. Waters, Shashikant Sheth, Mehendra Sheth, Kirit Sheth, Jamnadas Sheth, Jayesh Sheth, Virendra Sheth, S&J Perfume Co., Starion International Ltd., Ross Cosmetics Distribution Centers, Inc., and Barry A. Bloomfield. (Stipulation of Settlement ¶ A.38.)

was the term "affiliated" defined. By Order of September 30, 1993 (the September 30 Order), the district court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, preliminarily approved the terms of the Stipulation and settlement provided for therein (the Settlement) and certified the class in accordance with the terms of the Stipulation. The September 30 Order directed that a notice with a claim be mailed to all class members and that a hearing be held on December 15, 1993, to consider the fairness, reasonableness, and adequacy of the Settlement. The September 30 Order also designated Co-Lead Counsel as Settlement Counsel to process all Proofs of Claim and administer the Settlement.

Notice dated October 15, 1993, with attached claim forms, was sent to class members notifying them of the class certification and a proposed partial class settlement. The notice included an exclusion provision substantially the same as the one in the Stipulation:

> Excluded from the Class are Ernst & Young and the defendants in the Action, any subsidiary or affiliate of any of them, any person or entity who is a shareholder (other than a shareholder of Ross Cosmetics), partner, officer, director, or controlling person of any of them, any entity in which any of them has a controlling interest, members of the families of each of them and the legal representatives, heirs, successors or assigns of any of them. Also excluded from the Class will be any purchaser of Ross Cosmetics common stock during the Class Period, who requests exclusion.

(J.A. at 535.) Nowhere in the notice was the term"affiliate" defined. The notice gave all class members until November 30, 1993, to request exclusion from the class. Claimants-Appellants received the notice and did not seek exclusion from the class. Following a hearing on December 15, 1993, the district court issued an Order and Final Judgment approving the Settlement as fair, reasonable, and adequate.

After Ernst & Young filed an opposition to the proposed distribution to certain claimants, the district court held an evidentiary hearing on October 23, 1996, regarding postsettlement activities (the October 23 Hearing). At this hearing, the district court defined "affiliate" as "people who are [in] some way associated with this massive fraud."

8

(J.A. at 211.) The district court held that the Settlement Counsel were responsible for the investigation of claims to the Settlement and that the investigation was deficient in many respects. The district court concluded that further investigation into certain paid and contested claims was necessary and that it should exercise general supervisory powers over the postsettlement activities and administration of claims in the class action. As part of that power, the district court appointed a court investigator (the Court Investigator) to investigate and issue a report to the court on certain previously paid claims and contested claims. The Court Investigator's report recommended that the district court find, inter alia, that George J. O'Leary was an affiliate of Ross Freitas, the former President of Ross Cosmetics and a defendant in the suit, and his claim should therefore be rejected; that Gladys M. Safer should be deemed an affiliate of Freitas, and her claim should therefore be rejected; and that Paryank Ramesh Shah and UPS Corporation should be deemed affiliates because of Shah's "knowledge of previously undisclosed information relative to Ross Cosmetics['s] management structure," and their claims should therefore be rejected. (J.A. at 660.)

On September 2, 1997, the district court held a hearing on the Court Investigator's report, providing Claimants-Appellants with the opportunity to present evidence related to their contested claims (the September 2 Hearing). At this hearing, the Court Investigator stated that he was not sure of the working definition of the term "affiliate," but he had defined it as "individuals who conducted business or financial transactions with one of the defendants or one of the named companies." (J.A. at 233.) The Court Investigator's definition was challenged by two expert witnesses on behalf of Settlement Counsel, who defined "affiliate" based upon the definition in the federal securities laws, which contemplates control. Both experts rejected the Court Investigator's definition of "affiliate." One of these experts stated that applying the federal securities law concept of "affiliate," he saw no reason not to pay the claims of O'Leary, Shah, and UPS.

At the end of the hearing, the district court appointed a Special Counsel to the class (Special Counsel) and instructed him to work with the Court Investigator and Settlement Counsel for the class to review claims made by Claimants-Appellants and others against the settlement fund. The district court issued an Order dated October 22,

9

1997 directing, <u>inter alia</u>, that Special Counsel contact O'Leary, Safer, Shah, and UPS to resolve their pending claims. On January 20, 1998, the Special Counsel filed his Report and Recommendations to the district court.

On February 10, 1998, the district court issued an Order adjudicating the claims of O'Leary, Safer, Shah, and UPS (the February 10 Order). In the February 10 Order, the district court stated that "affiliated" and/or "control" persons as defined by Rule 12b-2 are excluded persons.[5] Citing <u>Zimmerman v. Bell</u>, 800 F.2d 386, 390 (4th Cir. 1986) and other cases as support, the district court stated that in addition, "all persons who had knowledge of any of the wrongdoings alleged in the Complaint would not be entitled to any recovery." (J.A. at 359.) The district court denied O'Leary's claim based upon its conclusion that he was an affiliate of Ross Freitas under the federal securities law definition in Rule 12b-2.[6] The district court denied Safer's claim based upon its conclusion that she had a "close connection or an alliance with Ross Freitas." (J.A. at 369.) Applying its "knowledge-of-wrongdoing" standard to Shah and UPS, the district court concluded that Shah and UPS would not be entitled to recovery

———————————————————————————————

[5] Rule 12b-2, promulgated under the Exchange Act, defines "affiliate" and "control" in the following manner:

> An "affiliate" of, or a person "affiliated" with, a specified person, is a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, the person specified.

> The term "control" (including the terms "controlling," "controlled by" and "under common control with") means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.

17 C.F.R. § 240.12b-2 (1998).

[6] Although the district court did not specifically mention Rule 12b-2 in its discussion of O'Leary's claim, we surmise that it excluded his claim under the Rule 12b-2 definition of "affiliate" based upon its discussion of the control Freitas possessed over O'Leary's stock brokerage account, its omission of any discussion of knowledge of wrongdoing by O'Leary, and its unequivocal conclusion that O'Leary was an affiliate of Freitas.

10

because Shah had "inside information unavailable to the public" of the involvement of the Core Sheth Families in the management of Ross Cosmetics gained through his contact with the Core Sheth Families and he made all investment decisions on behalf of UPS. (J.A. at 372.) These four claimants filed notices of appeal, and their cases were consolidated for appeal to this Court. We address their claims in turn.

II.

The district court applied the standard federal securities law definition of "affiliate" in Rule 12b-2 to exclude the claim of O'Leary from the Settlement. Because both Claimants-Appellants and Appellees do not dispute that an "affiliate" as defined in Rule 12b-2 is excluded from the Settlement, our task is limited to determining whether the district court clearly erred in its factual finding that O'Leary was an affiliate of Ross Freitas. We will set aside the district court's factual finding that O'Leary was an affiliate of Freitas as clearly erroneous only if we, after considering all of the evidence, are "left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). In making this determination, "we must give due regard to the opportunity of the district court to judge the credibility of witnesses." Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Corp., 65 F.3d 1113, 1122 (4th Cir. 1995).

The district court based its finding that O'Leary was an affiliate of Freitas upon evidence that (1) O'Leary executed an unlimited power of attorney dated June 4, 1992, authorizing Freitas to trade stock in O'Leary's brokerage account, (2) O'Leary lived at the same address as or with Carolyn Safer Kenner, a Ross Cosmetics corporate officer, (3) O'Leary traded through the same brokers as Kenner and Freitas and used the same account executive, and (4) Ralph McNamara, a long time friend of Freitas made inquiries about the status of O'Leary's account, Freitas's account, Safer's account, and the account of a Freitas-Safer stock partnership. The district court further pointed out that O'Leary failed to provide any additional evidence in support of his claim after the September 2 Hearing on the report of the Court Investigator.

11

At the October 23 Hearing, O'Leary testified that he did not have day-to-day dealings with Freitas and did not discuss any of the Ross Cosmetics stock transactions with Freitas. O'Leary also testified that no one made trades in his account without his instructions or consent. As the arbiter of credibility, the district court was free to discredit this self-serving testimony. See Cebollero v. Commissioner, 967 F.2d 986, 992 (4th Cir. 1992). Moreover, O'Leary's grant to Freitas of an unlimited power of attorney to trade in his account belies his claim that Freitas was merely a social contact. That the record does not indicate that any trading by Freitas actually occurred is irrelevant because the federal securities law defines "control" as possession of power to direct or cause the direction of the management and policies of a person, not the actual use of such power. See 17 C.F.R. § 240.12b-2 (1998) (Rule 12b-2 definition). In light of these facts, the district court's finding that O'Leary was an affiliate of Freitas was not clearly erroneous because it was not against the clear weight of the evidence considered in light of the entire record. See Jiminez v. Mary Washington College, 57 F.3d 369, 379 (4th Cir. 1995). We therefore affirm the district court's denial of O'Leary's claim.

III.

The district court excluded the claims of Shah and UPS from the Settlement based upon its finding that Shah had knowledge of wrong-doings alleged in the Complaint gained through his contact with the Core Sheth Families and excluded the claim of Safer from the Settlement based upon its finding that she had a close connection or an alliance with Ross Freitas. Because these grounds of exclusion deviate from the Rule 12b-2 definition of "affiliate" that is accepted by all parties to this litigation, the issue that we must address for these claims is whether these grounds of exclusion were appropriate. Claimants-Appellants argue that their fundamental due process rights will be violated if they are excluded from the Settlement based upon any definition of "affiliate" other than the Rule 12b-2 definition because they relied upon the latter in refraining from instituting their own suits and may now be prevented from suing individually due to the expiration of the applicable statute of limitations. Appellees counter that the district court appropriately exercised its equitable powers in excluding claimants who were associated with wrongdoing

12

or a wrongdoer from the settlement fund.**7** The district court's action can logically be interpreted either as adding other grounds of exclusion to the Stipulation or interpreting "affiliate" to include individuals who had knowledge of wrongdoing and/or a close connection with a wrongdoer. We address each of these possibilities in turn.

## A.

The first possibility is that the district court added "knowledge of . . . wrongdoings alleged in the Complaint" and/or a "close connection or an alliance" with a wrongdoer as another ground of exclusion under the Stipulation. We can dispose of this possibility rather easily. Although Rule 23(c)(1) of the Federal Rules of Civil Procedure provides that a district court may alter or amend the class "before the decision on the merits," that rule is inapplicable, absent egregious error, where the district court has already entered a final judgment approving a settlement of the class action suit. See Jeff D. v. Andrus, 899 F.2d 753, 758 (9th Cir. 1989). Moreover, the district court's power to approve or reject class action settlements under Rule 23(e) of the Federal Rules of Civil Procedure does not permit it to modify

_____

**7** Appellees also make two waiver arguments, neither of which is persuasive. First, Appellees argue that Claimants-Appellants waived any objection to the district court's definition of"affiliate" by not appealing from the December 15 Order approving the settlement. The December 15 Order never defined "affiliate," however, so it is not clear what Claimants-Appellants could have appealed. Second, Appellees argue that Claimants-Appellants waived any objection to the district court's definition of "affiliate" put forward at the October 23 Hearing. In its February 10 Order, however, the district court made no finding that any of the Claimants-Appellants was "associated" with the alleged fraud, and, in fact, adopted a different and even broader definition of "affiliate." Moreover, an appeal of the district court's definition at the October 23 Hearing would have constituted an interlocutory appeal, which is disfavored. See 28 U.S.C.A. § 1291 (West 1993); Gardner v. Westinghouse Broadcasting Co., 437 U.S. 478, 480 (1978). As this Court has noted, "A single appeal following final judgment facilitates orderly litigation and comprehensive appellate review of all issues presented, many of which are dependent upon or related to other issues in the suit." Carson v. American Brands, Inc., 606 F.2d 420, 422 (4th Cir. 1979) (en banc), rev'd on other grounds, 450 U.S. 79 (1981).

13

the terms of a negotiated settlement. See Evans v. Jeff D., 475 U.S. 717, 727 (1986). In this case, the district court made its earliest hint of excluding individuals with knowledge of wrongdoing or a close connection with a wrongdoer at the October 23 Hearing, nearly three years after it had approved the Settlement. We do not believe that the omission from the Stipulation of an explicit exclusion of individuals with knowledge of wrongdoing and/or a close connection with a wrongdoer constitutes egregious error sufficient for the district court to alter the class. However noble a goal it might have been to exclude these individuals from sharing in the Settlement, the district court was not empowered unilaterally to add this additional ground of exclusion to the Stipulation after it had approved the Settlement.

B.

The second possibility is that the district court interpreted "affiliate" to include knowledge of wrongdoing and/or a close connection or an alliance with a wrongdoer. A settlement agreement is a contract and must be interpreted as such. See United States v. ITT Continental Baking Co., 420 U.S. 223, 238 (1975). Because contract construction is a question of law, we review the district court's interpretation of the Stipulation de novo. See Nehi Bottling Co. v. All-American Bottling Corp., 8 F.3d 157, 161-62 (4th Cir. 1993). The Stipulation states that all terms "shall be governed and interpreted according to the laws of Delaware without regard to its conflict of law rules, unless otherwise superseded or governed by federal law in which case federal law shall take precedence." (Stipulation of Settlement¶ Q.10.) In federal securities litigation, this Court gives effect to a choice-of-law provision in a contract absent evidence that the provision is unreasonable. See Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996). Finding no unreasonableness here, we apply Delaware law to determine the definition of "affiliate" unless the definition of "affiliate" is governed by federal law, in which case we apply federal law.

When interpreting a contract under Delaware law, a court's authority is limited to giving effect to the parties' intentions, as evidenced by the terms of the contract. See Burge v. Fidelity Bond & Mortgage Co., 648 A.2d 414, 420 (Del. 1994). Under the plain language approach to contract interpretation, where the relevant contract provision is clear and unambiguous, a court should give effect to the provi-

14

sion's plain meaning. See Myers v. Myers, 408 A.2d 279, 280 (Del. 1979). When the provision at issue, however, is "fairly susceptible of different interpretations or may have two or more different meanings, there is ambiguity." Eagle Indus. v. DeVilbiss Health Care, Inc., 702 A.2d 1228, 1232 (Del. 1997). In an ambiguous situation, "the interpreting court must look beyond the language of the contract to ascertain the parties' intentions." Id.

Our task, therefore, is to determine whether the term "affiliate" in the Stipulation is ambiguous. In standard legal parlance, "affiliate" denotes a close connection or association between two persons. See, e.g., Black's Law Dictionary 58 (6th ed. 1990) (defining "affiliate" as "signif[ying] a condition of being united; being in close connection, allied, associated, or attached as a member or branch"). Rule 12b-2, the definition advanced by Claimants-Appellants, defines "affiliate" in a similar, but more narrow, fashion:

> An "affiliate" of, or a person "affiliated" with, a specified person, is a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, the person specified.
>
> The term "control" (including the terms "controlling," "controlled by" and "under common control with") means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.

17 C.F.R. § 240.12b-2 (1998). With these definitions in mind, we turn to the claims at issue.

The district court excluded the claims of Shah and UPS from the Settlement on the ground that Shah had knowledge of wrongdoing alleged in the Complaint gained through his contact with the Core Sheth Families. The district court excluded Safer's claim from the Settlement on the ground that she had a close connection or an alliance with Freitas. In essence, the district court applied the standard legal definition of "affiliate" to deny the claims of Safer, Shah, and UPS. This definition is certainly a plausible one. The context in which

15

"affiliate" is used in the "Excluded Persons" section of the Stipulation and in the class notice sent to class members confirms that the parties intended to exclude persons with some connection to Defendants or Ernst & Young from the Settlement.[8] See Stipulation of Settlement ¶ A.16 ("Excluded Persons shall mean the Defendants and Ernst & Young, . . . any Person in which any Defendant or Ernst & Young has a controlling interest or which is related to or affiliated with . . . ."); Class Notice (J.A. at 535) ("Excluded from the Class are Ernst & Young and the defendants in the Action, any subsidiary or affiliate of any of them . . . ."). The participants' other uses of "affiliate" during the settlement proceedings reiterate that "affiliate" implies a close relationship between two persons. See Letter from Co-Lead Counsel to Gladys Safer of 12/12/94 (J.A. at 584) (describing Carolyn Safer Kenner, a former Ross Cosmetics officer, as "a business partner and an affiliate of" Freitas); Stipulation of Settlement ¶ A.30 (defining "Released Parties" as, inter alia,"the Settling Defendants, . . . each and every one of their predecessors, present or former successors, assigns, affiliates . . . .").

Although a "close connection or an alliance" is a plausible definition of "affiliate," it is not the only plausible one. Because the Settlement arose from a class action lawsuit brought under the Exchange Act, the parties to the Stipulation may have intended to limit "affiliate" to its definition in Rule 12b-2, a regulation promulgated under the Exchange Act. The term "affiliate" is thus fairly susceptible of two different interpretations: (1) the Rule 12b-2 definition of a person who controls, or is controlled by, another person, and (2) the standard legal definition of a person with a close connection or alliance with another person, which encompasses the Rule 12b-2 definition. Accordingly, we must look beyond the language of the Stipulation to ascertain the parties' intentions in excluding "affiliates" of the Defendants and of Ernst & Young from the Settlement.

Unfortunately, we are not well-suited to the task before us. We simply cannot discern from the record the definition of "affiliate" agreed upon by the parties. Because "affiliate" is fairly susceptible of two different interpretations, it is appropriate for the district court to

_____

[8] The Stipulation defines "Person" as "any individual, firm, corporation or other entity." (Stipulation of Settlement¶ A.25.)

16

receive extrinsic evidence to determine what the parties to the Stipulation believed the term "affiliate" to mean. See Eagle Indus., 702 A.2d at 1233 (holding that trial court may consider extrinsic evidence, including prior agreements and communications of the parties, in construing ambiguous contractual provision). After determining the definition of "affiliate" agreed upon by the parties, the district court must apply this definition to the claims of Safer, Shah, and UPS. We therefore vacate the district court's denial of the claims of Safer, Shah, and UPS and remand to the district court to hold an evidentiary hearing to determine the definition of "affiliate" adopted by the parties and to apply this definition to the claims of Safer, Shah and UPS.**9**

IV.

In sum, we affirm the district court's exclusion of O'Leary from the Settlement based upon our conclusion that the district court did not clearly err in finding that he was an affiliate of Freitas under the federal securities law definition of "affiliate." We vacate the district court's exclusion of Safer, Shah, and UPS from the Settlement based

_____

**9** "Generally speaking, the practical interpretation of a contract by the parties to it for any considerable period of time before it comes to be the subject of controversy is deemed of great, if not controlling, influence." Old Colony Trust Co. v. City of Omaha, 230 U.S. 100, 118 (1913). Thus, the district court should credit evidence that indicates what the parties to the Stipulation understood "affiliate" to mean prior to the hearings held by the district court. See Sanchez v. Maher, 560 F.2d 1105, 1108 & n.3 (2d Cir. 1977) (upholding district court's reliance on letter written by defendant over one year after stipulation was entered into as evidence of meaning of ambiguous provision). We do not believe that a conclusion by the district court that "affiliate" included individuals who had a close connection or association with any of the Defendants would violate the fundamental due process rights of Claimants-Appellants. Unlike the corporation in In re Anthracite Coal Antitrust Litigation, 87 F.R.D. 555 (M.D. Pa. 1980), a case relied upon by Claimants-Appellants, Claimants-Appellants were not misled into believing that they were included in the plaintiff-class; they were only unsure about the exact meaning of "affiliate" adopted by the parties. After receiving the class notice, Claimants-Appellants easily could have inquired about the definition of "affiliate" adopted by the parties prior to November 30, 1993, the deadline for requesting exclusion from the class.

17

upon our conclusion that the district court may have erred in defining "affiliate" to include more than the federal securities law definition and in applying this expanded but perhaps not agreed-upon definition to exclude their claims. Because we cannot discern from the record what definition of "affiliate" the parties to the Stipulation adopted, we remand this case to the district court with instructions to hold an evidentiary hearing to make this determination and to apply the resulting definition to the claims of Safer, Shah, and UPS.

AFFIRMED IN PART, VACATED AND REMANDED IN PART

18