560 F.2d 1105
 Andriana SANCHEZ et al., and on behalf of all others
similarly situated, Plaintiffs-Appellees,
v.
Edward MAHER et al., Commissioner of the Department of
Social Services of the State of Connecticut,
Defendants-Appellants,
United States Department of Health, Education and Welfare,
Defendants-Appellees.
 No. 871, Docket 76-7539.
 United States Court of Appeals,
Second Circuit.
 Argued April 4, 1977.
Decided Sept. 2, 1977.
 
 Angel Bello Billini, Alice Bussiere, New Haven Legal Assistance Association, New Haven, Conn., and Oscar Garcia-Riviera, Richard J. Hiller, Puerto Rican Legal Defense and Education Fund, Inc., New York City, for plaintiffs-appellees.
 Carl R. Ajello, Atty. Gen. of Conn., Francis J. MacGregor, Asst. Atty. Gen., Hartford, Conn., for appellant.
 J. Stanley Pottinger, Asst. Atty. Gen., Frank D. Allen, Jr., Judith E. Wolf, Dept. of Justice, Washington, D. C., for Federal defendants-appellees.
 Before OAKES, Circuit Judge, WYZANSKI* and HOLDEN,** District Judges.
 HOLDEN, District Judge:
 On April 18, 1973, certain Spanish-speaking recipients of public assistance programs in Connecticut filed a class action complaint alleging discrimination by the Connecticut Welfare Department (CWD), (now the Department of Social Services) and its Commissioner in providing certain services to them on an unequal basis with English-speaking recipients. The Secretary of Health, Education and Welfare (HEW) was joined as a defendant in the action. Following extensive discovery and several conferences in Judge Zampano's chambers, HEW and CWD entered into a stipulation, approved by the district court on June 10, 1974, which included an agreement by CWD to hire additional Spanish-speaking personnel. This stipulation was prepared by HEW and provides:
 (1) The CWD will immediately seek to hire ten (10) additional all-purpose bilingual English-Spanish workers. This will be accomplished by going through the CWD's WIN lists and requesting another Interpreter's examination to increase its Interpreter capability . . ..
 (2) The CWD will also proceed to hire ten (10) additional professional workers in the Social Services. This will be done by the CWD immediately requesting the State Personnel Commissioner to request that the Social Worker/Spanish-speaking classification be put on the next agenda of the Personnel Policy Board. The CWD will also request new classifications for Case Worker I Spanish-Speaking and Case Worker II Spanish-Speaking . . ..
 After this agreement was made, a further stipulation was entered on July 11, 1974 which removed HEW as a party to the action.
 At the time of the agreement the Commissioner of the Welfare Department was Nicholas Norton, who was named as a defendant in the action when filed. He was succeeded by the defendant Edward Maher on February 1, 1975.
 At the time the stipulation was agreed upon, CWD employed fifty-seven (57) fluent all-purpose English-Spanish workers and five fluent English/Spanish-speaking Social Workers doing social work. This number is referred to in the court's order as the base figure and the court's order listed, by name, the employees in these two categories, for a total of sixty-two (62). In addition to the base figure of fifty-seven all-purpose workers then in service, there were twelve existing vacancies for workers in this category. And the parties are agreed that the stipulation required the State to hire ten (10) additional all-purpose workers. It is the position of the private plaintiffs and HEW that the State is required to have in its employ a total of seventy-nine all-purpose bilingual workers. The computation is reached by adding the number of fifty-seven (57) all-purpose Spanish-speaking workers employed on June 10, 1974; plus twelve (12) more called for by the unfilled vacancies and the additional ten (10) bilingual workers provided in the Paragraph (1) of the first stipulation.
 The ten (10) additional workers provided for in the second paragraph of the stipulation of June 10, 1974, are in a different category, classified as professional social workers. In 1974, at the time the stipulation was filed, the State employed five (5) professional workers in CWD. The second paragraph of the stipulation required this number to be increased to a complement of fifteen.
 Performance of the stipulation miscarried on the total number of all-purpose English-Spanish workers required to be employed by the stipulation. The State through CWD took the position that it was called upon to hire only ten (10) additional all-purpose workers above the base figure of fifty-seven (57) without regard to the vacancies that remained unfilled on that date. HEW reentered the controversy to resolve the conflict. After an evidentiary hearing conducted by Judge Zampano on the plaintiff's motion to enforce the stipulation, the court adopted the construction claimed by the plaintiffs and HEW.
 The evidence presented at the hearing included a letter written by the defendant Edward W. Maher, the Commissioner of the Connecticut Department of Social Welfare on August 15, 1975 to HEW. The letter establishes that at that time CWD substantially concurred with the interpretation of the stipulation advanced by the plaintiffs and HEW.[1] On the strength of this and other evidence presented, the court found that at the time of the hearing in April, 1976 the State defendant had in its employ a total of seventy-one (71) fluent all-purpose bilingual English-Spanish workers and identified each by name. The court further found that in order to comply with the HEW-CWD stipulation, the State is required to immediately hire eight (8) additional all-purpose workers for a total complement of seventy-nine (79) and entered judgment to this effect.[2] In this appeal from that decision CWD assigns error to the district court's reliance on evidence extrinsic to the stipulation and, more particularly, the use of the Maher letter of August 15, 1975.
 The district court has not only the power, but the duty to enforce the stipulation which it had approved. See Meetings & Expositions, Inc. v. Tandy Corp., 490 F.2d 714, 717 (2d Cir. 1974). The court-approved agreement of the parties is to be construed according to principles governing construction of contracts in general. United States v. ITT Continental Baking Co., 420 U.S. 223, 238, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975).
 The provisions in the agreement for the hiring of "10 additional workers" is unclear. The parties are in dispute as to whether the number provided is inclusive or exclusive of the vacancies that existed at the time the stipulation was reached. The language adopted by the parties in their stipulation is susceptible of at least two fairly reasonable interpretations. This presented a triable issue of fact that could only be achieved by resort to extrinsic evidence. Indeed, the parties have the right to introduce evidence beyond the stipulation to aid the court in interpreting an agreement whose provisions are not free from ambiguity. Cf. Heyman v. Commerce and Industry Insurance Co., 524 F.2d 1317, 1320 (2d Cir. 1975) (Kaufman, C. J.); Asheville Mica Co. v. Commodity Credit Corp., 335 F.2d 768, 770 (2d Cir. 1964).
 
 
 1
 The hearing in the district court followed the course dictated by this rule. Both parties to the stipulated settlement introduced evidence by way of depositions, documentary and oral evidence. It is at once apparent that the most persuasive proof presented to Judge Zampano was the letter written by Commissioner Maher to John G. Bynoe, the Regional Director of Office of Civil Rights for HEW, dated August 15, 1975, and the document was admitted without objection at the hearing. The court's reliance on this evidence was legally sound.
 
 
 2
 Generally speaking, the practical interpretation of a contract by the parties to it for any considerable period of time before it comes to be the subject of controversy, is deemed to be of great, if not controlling, influence.
 
 
 3
 Old Colony Trust Co. v. City of Omaha, 230 U.S. 100, 118, 33 S.Ct. 967, 972, 57 L.Ed. 1410 (1913).[3]
 
 
 4
 The evidence presented by CWD at the hearing in the district court included oral testimony by the Assistant Attorney General, Mr. MacGregor, who departed from his role as an advocate to become a witness for the State. He testified that the stipulation was prepared by counsel for HEW and that the subject of hiring additional workers in excess of the existing vacancies was not the subject of discussion between him and HEW counsel at the time the agreement was drafted.
 
 
 5
 After Judge Zampano had indicated that he accepted the interpretation of the stipulation adopted by Commissioner Maher and HEW, counsel for CWD requested permission to call Samuel Fish, an attorney for HEW who assisted in the preparation of the agreement. CWD offered to prove by the testimony of Mr. Fish that the stipulation was drafted by HEW and the subject of hiring ten additional all-purpose workers, after the existing vacancies were filled, was not discussed.
 
 
 6
 It clearly appears from the record that the court was mindful of Mr. MacGregor's prior testimony on these very points. And the testimony of this witness was not disputed by the plaintiffs nor HEW. Since the offered evidence was cumulative on facts that were not contradicted, there was no prejudicial error in its exclusion. The ruling had no effect inconsistent with substantial justice within Fed.R.Civ.P. 61. See Savard v. Marine Contracting, Inc., 471 F.2d 536, 543 (2d Cir. 1972); Severi v. Seneca Coal & Iron Corp., 381 F.2d 482, 489 n.7 (2d Cir. 1967); Smith v. Bear, 237 F.2d 79, 89 (2d Cir. 1956).
 
 
 7
 We find no error in the proceedings in the district court. The judgment order directing compliance with the stipulation of Connecticut Welfare Department and the Department of Health, Education and Welfare is affirmed.
 
 
 
 *
 Senior Judge of the United States District Court for the District of Massachusetts, sitting by designation
 
 
 **
 Chief Judge of the United States District Court for the District of Vermont, sitting by designation
 
 
 [1]
 The evidence at the hearing included former CWD Commissioner Norton's letter to John Bynoe of HEW, prior to entry of the stipulation and communications from Norton's successor, Maher, to HEW. Mr. Norton's letter discloses no discussion between HEW and CWD regarding filling of the existing twelve vacancies with bilingualists. His successor, Commissioner Maher, however, by a letter of August 15, 1975, expressed his understanding that "in addition to these ten workers (referred to in the stipulation), there were twelve vacancies for bilingual workers existing at the time the stipulation was signed and that these too should be filled . . .. My department will hire (eight bilingual employees in addition to two already hired) and also fill the twelve vacancies for bilingual workers existing in July 1974 a total of 20 positions." Later, on December 31, 1975, Maher advised Bynoe that 77 bilingual workers were then employed and that seven more would have to be hired in order to comply with the stipulation. The total of 84 bilingual workers implied by this correspondence is consistent with filling the 12 vacancies with bilingualists and hiring "10 additional workers," thus bringing the total number from 62, the base figure at the time of the agreement, to 84
 
 
 [2]
 At oral argument, it developed that, although a timely appearance was taken, the district court had not entered a judgment effectuating its order of September 2, 1976, and thus the technical requirements of Fed.R.Civ.P. 58 and 79(a) were not fulfilled. The parties then submitted a motion for judgment to the district court, which was granted and on April 20, 1977 judgment was entered nunc pro tunc as of September 2, 1976. This judgment, although entered out of time, is appealable and sufficient to confer appellate jurisdiction. Since the appellees concede that they have not been prejudiced by filing of the notice of appeal prior to entry of judgment, we have proceeded to decide the case on the written and oral arguments presented on April 4, 1977
 
 
 [3]
 The appellant urges the point that Commissioner Maher was not involved in the original negotiation which culminated in the stipulation and the understanding which he expressed in his letter of August 15, 1975, was suggested by representatives of HEW. These facts do not require a result contrary to that reached by the district court. The interpretation afforded by the parties to the undertaking before the heat of controversy had been generated is of predominant importance, despite what may have been commonly understood at the inception of the agreement. Id. at 117, 33 S.Ct. 967. The same principle applies if there was no common understanding on the point as the appellant seems to contend