23-8010-cv (L)
*SEC v. GPB Capital Holdings, LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of December, two thousand twenty-four.

PRESENT:
> SUSAN L. CARNEY,
> JOSEPH F. BIANCO,
> WILLIAM J. NARDINI,
> *Circuit Judges*.

_____

UNITED STATES SECURITIES & EXCHANGE COMMISSION,

> *Plaintiff-Appellee*,

v.                                                      23-8010-cv (L); 23-8035-cv (Con)

GPB CAPITAL HOLDINGS, LLC,

> *Defendant-Appellee*,

v.

ASCENDANT ALTERNATIVE STRATEGIES, LLC, JEFFREY LASH,

> *Defendants*,

ASCENDANT CAPITAL, LLC, JEFFRY SCHNEIDER, DAVID GENTILE,

*Defendants-Appellants,*

UNITED STATES ATTORNEY'S OFFICE FOR
THE EASTERN DISTRICT OF NEW YORK,

*Intervenor.*\*

_____

| | |
|---|---|
| FOR PLAINTIFF-APPELLEE: | MORGAN BRADYLYONS, Bankruptcy Counsel (Megan Barbero, General Counsel, Michael A. Conley, Solicitor, Samuel B. Goldstein, Counsel to the General Counsel, Daniel Staroselsky, Assistant General Counsel, *on the brief*), Securities and Exchange Commission, Washington, District of Columbia. |
| FOR DEFENDANT-APPELLEE: | GLENN A. KOPP (Joseph De Simone, Nicolas E. Rodriquez, *on the brief*), Mayer Brown LLP, New York, New York. |
| FOR DEFENDANTS-APPELLANTS: | MICHAEL F. DEARINGTON (Glenn C. Colton, *on the brief*), ArentFox Schiff LLP, Washington, District of Columbia, and New York, New York, *for* Ascendant Capital, LLC and Jeffry Schneider. |
| | ADRIANA RIVIERE-BADELL (Matthew I. Menchel, *on the brief*), Kobre & Kim LLP, Miami, Florida, (Daniel J. Horwitz, and Jonathan R. Jeremias, *on the brief*), McLaughlin & Stern, LLP, New York, New York, *for* David Gentile. |

Appeal from the orders of the United States District Court for the Eastern District of New York (Margo K. Brodie, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND**

_____

\* The Clerk of the Court is respectfully directed to amend the caption on this Court's docket to be consistent with the caption on this order.

**DECREED** that the orders of the district court, entered on December 7, 2023, are **AFFIRMED** and the stay is **VACATED**.

Defendants-Appellants Ascendant Capital, LLC ("Ascendant Capital"), Jeffry Schneider, and David Gentile appeal from the district court's orders appointing a receiver and imposing a litigation injunction. Appellants argue the district court erred in converting the court-ordered monitorship of Defendant-Appellee GPB Capital Holdings, LLC ("GPB") into a receivership. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## BACKGROUND

GPB is an asset management firm for which Gentile served as CEO and sole manager until the complaint was filed, at which point he resigned and non-party Robert Chmiel replaced him. Gentile, however, continued to own 99% of the company's membership interests. Schneider is the sole owner of Ascendant Capital, which served as a GPB branch office and placement agent. The remaining non-party Defendants are also associated with GPB.

On February 4, 2021, Plaintiff-Appellee United States Securities and Exchange Commission (the "SEC") initiated the instant action against the Defendants-Appellants, GPB, Ascendant Alternative Strategies, LLC ("Ascendant Strategies"), and Jeffrey Lash for violations of the Securities Act of 1933, the Securities Exchange Act of 1934, and the Investment Advisers Act of 1940, arising out of an alleged long-running fraud scheme involving the misuse of investor funds and manipulation of financial statements. The complaint alleged, "[s]ince its founding in 2013, GPB Capital has raised in excess of $1.7 billion for at least five limited partnership funds from approximately 17,000 retail investors nationwide, approximately 4,000 of whom are seniors"

3

and "[n]early all of the $1.7 billion raised is still at risk." Joint App'x at 28.

Shortly after filing the complaint, the SEC sought a court-ordered monitorship over GPB, to which GPB and Gentile consented and no other party objected. The district court granted this request and entered an order, which appointed Joseph T. Gardemal III as GPB's independent monitor. Upon an unopposed motion, the monitorship was later amended by the Amended Monitor Order ("AMO"), which affirmed the monitor's "authority to approve or disapprove" of, *inter alia*: (1) "any retention . . . of any management-level professional or person . . ., subject to an acceptable procedure agreed to with the Monitor" and (2) "any material change to compensation of any executive officer, affiliate, or related party . . . ." *Id*. at 188–89. The AMO further provided that the monitor would notify GPB if the company was not in material compliance with the AMO's terms, and, if GPB failed to cure the violation within ten business days, the AMO stated, "upon motion of the SEC resulting in a Court Order, the Monitorship shall convert to a receivership." *Id.* at 192–93, ¶¶ 20, 21.

On March 10, 2021, upon motion from Intervenor the United States Attorney's Office for the Eastern District of New York and with the consent of the parties, the district court stayed this civil action pending the conclusion of a related criminal case and grand jury investigation.[1] The district court, however, explicitly excluded from the stay "any work performed by the Monitor,

---

[1] "This Court has discretion to determine whether to take judicial notice of documents that are not part of the record on appeal." *Dixon v. von Blanckensee*, 994 F.3d 95, 102 (2d Cir. 2021). Accordingly, we take notice that Gentile, Schneider, and Lash were indicted on multiple counts of securities fraud, wire fraud, and conspiracy in connection with their management of GPB. *See generally United States v. Gentile*, No. 21-cr-54 (RPK) (PK) (E.D.N.Y. Jan. 29, 2021) ("*Gentile* Criminal Dkt."), ECF No. 1. Lash pleaded guilty and, after a jury trial, Gentile and Schneider were convicted on all counts. *See Gentile* Criminal Dkt., ECF Nos. 218, 472–73. Gentile and Schneider have filed several post-trial motions, which are now pending before the district court, and all three defendants are awaiting sentencing. *See Gentile* Criminal Dkt., ECF Nos. 487–90.

matters related to the Monitorship, or any future expansion of the Monitorship." *Id.* at 11.

On May 27, 2022, Gentile informed GPB, through GPB's interim CEO and manager Chmiel, that Gentile "ha[d] appointed three new, additional Managers to direct GPB" pursuant to his rights under the operating agreement. Dist. Ct. Dkt. No. 168-10 at 2. Gentile purported to have effectuated these actions and resolutions pursuant to Delaware law and GPB's LLC Agreement based upon his "written consent" as the "Member holding 99% of the Distribution Percentage of GPB." *Id.* at 2, 6. Gentile told Chmiel that he "expect[ed] that [the new managers] w[ould] be given full and immediate access to GPB," and that Chmiel "should immediately cease any and all actions taken or to be taken in the capacity of a Manager," as he now needed a "consensus" from the new managers. *Id.* at 2. Gentile also provided Chmiel a copy of his "Action by Written Consent of the Member Holding 99% of the Distribution Percentage of GPB Capital Holdings, LLC," which stated that, "effective as of the date hereof, [the new managers] are appointed to serve as Managers of the Company until their resignation or removal." *Id.* at 6. With approval from the new managers, Gentile then amended GPB's operating agreement to, *inter alia*, provide compensation arrangements for the new managers of up to $400,000 a year and allow Gentile to unilaterally change GPB's operating agreement in the future without manager approval.

On May 31, 2022, the monitor informed GPB and Gentile that he considered Gentile's May 27, 2022 actions on behalf of GPB to be a violation of the AMO provisions governing monitor approval of management retention and changes to executive compensation. That same day, Gentile filed a motion in the district court to amend the AMO to, *inter alia*, narrow the scope of the monitor's authority and prevent the disposition of GPB's assets pending "a strategic assessment by new management appointed by Mr. Gentile." Joint App'x at 215. Although GPB viewed

Gentile's appointment of the new managers as invalid in light of the AMO, the managers did not resign, nor did Gentile remove them, within ten business days of notice from the monitor. The amendments to GPB's operating agreement also were not withdrawn or amended within that ten-day timeframe.

The SEC subsequently filed a motion, supported by the monitor and GPB itself, to convert the monitorship into a receivership and enjoin all litigation to consolidate the claims against GPB and its affiliates. On July 28, 2023, United States Magistrate Judge Vera M. Scanlon issued a Report and Recommendation ("R&R"), recommending that the district court grant the SEC's motion for a receivership and deny Gentile's motion to amend the monitorship. On December 7, 2023, over the objections of Gentile, Schneider, and Ascendant Capital, the district court reached the same conclusion as that proposed in the R&R, converted the monitorship into a receivership, and imposed a litigation injunction. *See generally SEC v. GPB Cap. Holdings, LLC*, No. 21-CV-583 (MKB) (VMS), 2023 WL 8468467 (E.D.N.Y. Dec. 7, 2023). The district court also issued an order setting forth the terms of the receivership and injunction. Gentile, Schneider, and Ascendant Capital timely appealed and moved to stay the orders pending appeal. The SEC did not oppose the stay request, and we granted it on May 14, 2024. On August 30, 2024, the SEC filed a motion to lift the stay, which Appellants opposed.

## DISCUSSION

"[A] district court's decision to appoint a . . . receiver may be disturbed on appeal only if the district court has abused its discretion." *SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir. 1987). "A district court abuses its discretion if it (1) bases its decision on an error of law or uses the wrong legal standard; (2) bases its decision on a clearly erroneous factual finding; or

6

(3) reaches a conclusion that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions." *Klipsch Grp., Inc. v. ePRO E-Com. Ltd.*, 880 F.3d 620, 627 (2d Cir. 2018) (internal quotation marks and citation omitted). Mixed questions of law and fact are reviewed for clear error when predominantly factual but *de novo* when predominantly legal. *See U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 396 (2018).

"[C]ourts have consistently held that [the] power [to appoint receivers] exists where necessary to prevent the dissipation of a defendant's assets pending further action by the court." *Am. Bd. of Trade*, 830 F.2d at 436 (internal citation omitted); *see also Eberhard v. Marcu*, 530 F.3d 122, 131 (2d Cir. 2008) (explaining that receivers "help preserve the status quo," "conserve the existing estate," and "marshal the assets of the defendant" (internal quotation marks and citations omitted)). Indeed, Section 21(d)(5) of the Securities Exchange Act of 1934 broadly provides: "In any action or proceeding brought or instituted by the [SEC] under any provision of the securities laws, the [SEC] may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors." 15 U.S.C. § 78u(d)(5). Moreover, even before the enactment of this provision, and in the "absence of explicit statutory authority, . . . we repeatedly have upheld the appointment of . . . receivers to effectuate the purposes of the federal securities laws." *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1105 (2d Cir. 1972); *see id.* (explaining that such appointment is an "appropriate exercise by the district court of its equity powers"); *SEC v. Byers*, 609 F.3d 87, 92 (2d Cir. 2010) ("There is no question that district courts may appoint receivers as part of their broad power to remedy violations of federal securities laws.").

In addition, we have held that "[a] court can take any reasonable action . . . to secure compliance [with a court order], and the scope of a district court's equitable powers to remedy past wrongs is broad." *In re Tronox Inc.*, 855 F.3d 84, 112 (2d Cir. 2017) (internal quotation marks and citation omitted). "The court's choice of how to enforce the order is reviewed for abuse of discretion." *Id*.

Here, the district court "convert[ed] the monitorship into a receivership pursuant to the terms of the [AMO] based on GPB's violations of the order, caused by Gentile's actions, and GPB's failure to cure the violations." *GPB Cap. Holdings*, 2023 WL 8468467, at *6. Appellants raise several challenges to the district court's exercise of its discretion in reaching that determination.[2] We find each of those arguments unpersuasive.

First, Appellants assert that the AMO does not give the district court the authority to convert the monitorship into a receivership absent independent findings of "a 'clear' and 'substantial' likelihood of success on the merits—both as to the alleged securities law violations and risk of recurrence—" and "a clear showing that an appointment of a receiver was necessary." Appellants' Br. at 24–25. As set forth below, we conclude that the district court did not abuse its discretion in using its equitable powers to convert the monitorship into a receivership, pursuant to the mandatory language contained in Paragraph 21 of the AMO, to remedy the violation of the AMO, without additional determinations.[3]

---

[2] On appeal, Appellants do not challenge the imposition of the litigation injunction.

[3] Because we affirm on this ground, we need not address whether a "likelihood of success" determination would have been required for this type of receivership if the district court had relied only upon its statutory and equitable power to convert the monitorship into a receivership under the federal securities laws. *See* § 78u(d)(5); *see also Byers*, 609 F.3d at 92. We also need not address whether a "clear necessity"

8

If a party has previously "consented to the relief provided," they cannot challenge the court's subsequent imposition of that relief. *Berger v. Heckler*, 771 F.2d 1556, 1567 (2d Cir. 1985). In *Berger*, for instance, we explained that prior cases requiring "injunctive relief [to] be no more burdensome to the defendant than necessary . . . are not . . . governing where . . . the defendant consented to the [injunctive] relief provided." *Id.* (citation omitted). We reached a similar conclusion in *Geller v. Branic International Realty Corp.*, 212 F.3d 734, 738 (2d Cir. 2000), in which a district court ordered a settlement agreement which provided that the case would be sealed. Despite this agreement, the district court subsequently declined to seal on the ground that the parties had failed to show "good cause," as traditionally required under Second Circuit precedent. *Id.* We vacated that decision, holding that, once the order was entered, "discretion of th[e] breadth [exercised by the district court] no longer exist[ed]." *Id.* Ultimately, "[t]he district court has not only the power, but the duty to enforce [a] stipulation which it ha[s] approved," *Sanchez v. Maher*, 560 F.2d 1105, 1108 (2d Cir. 1977), unless it would be "manifestly unjust" to do so, *Sinicropi v. Milone*, 915 F.2d 66, 68 (2d Cir. 1990). Indeed, even if a private agreement which has not been adopted by a court "mandates the appointment of a receiver" upon a certain condition, the parties are "entitled to the appointment of a receiver regardless of proving the necessity for the appointment." *Naar v. I.J. Litwak & Co.*, 688 N.Y.S.2d 698, 699 (2d Dep't 1999);[4] *see also Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988) (explaining

---

determination would have been required under those circumstances or whether the district court's statement that "given the extreme circumstances of this case, [the court] finds that the requested relief is merited" would have satisfied that requirement. *GPB Cap. Holdings*, 2023 WL 8468467, at *15.

[4] *Naar* is instructive here because an "agreement of the parties is to be construed according to principles governing construction of contracts in general," *Sanchez*, 560 F.2d at 1108 (citations omitted), and "the

9

that even an agreement stating that a party "may" apply for a receiver "strongly supports the appointment of a receiver").

Here, GPB, as the subject of the monitorship, as well as Gentile, as the majority owner of GPB, consented to the terms of the AMO, which explicitly provided in Paragraph 21, without limitation, that the relief for an uncured violation of the monitorship "shall" be a receivership. Moreover, none of the other defendants, including Schneider and Ascendant Capital, objected to the AMO. Therefore, under the mandatory language of the AMO, the district court was not required to make any determination of a likelihood of success on the merits, or any other findings, before converting the monitorship into a receivership once it found a violation of the AMO that was not cured in a timely fashion.

In any event, the district court did not rely only upon the mandatory language of the AMO, but rather explained in great detail the various findings that supported the appointment of the receiver for this violation, including, *inter alia*, the following: (1) "Gentile's actions and sworn testimony have raised significant concerns about [his] credibility"; (2) "there is an imminent risk that the assets of GPB will diminish in value—harming investors—based on Gentile's prior conduct" due, in part, to "Gentile's previous [] appointment of new managers, whose collective compensation could reach over $1.2 million annually to be paid by GPB, and [] attempt to reinstate three terminated executives of a company directly overseen by GPB, whose collective compensation amounts to nearly $1.7 million annually to be paid by GPB"; (3) "legal remedies [such as amending the AMO or a financial penalty] are inadequate"; and (4) "the probability of

interpretation of a contract is ordinarily a matter of state law," *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 54 (2015).

10

harm to the SEC, GPB, and GPB's investors by denial of the receivership would be greater than the injury to [Schneider, Ascendant Capital, and Gentile]" from the receivership.[5] *GPB Cap. Holdings*, 2023 WL 8468467, at \*13–14 (internal quotation marks and citation omitted). The district court concluded by emphasizing: "The Court does not exercise its discretion to convert the monitorship to a receivership lightly, but, given the extreme circumstances of this case, it finds that the requested relief is merited." *Id*. at \*15. These findings, although not required under the language of the AMO, were well-supported by the record, including the imminent risk of dissipation of assets, and provided a more than sufficient basis for the district court to exercise its equitable power to impose the receivership, as set forth in the AMO, to remedy a violation of its terms. In short, even in the absence of a finding of a likelihood of success on the merits by the SEC, or other additional findings, the district court acted well within its discretion in converting the monitorship into a receivership based on an uncured violation of the AMO by Gentile, acting on behalf of GPB.

Second, to the extent Appellants challenge the district court's factual determination that the AMO was violated, we find no clear error in that determination. The written consent submitted by Gentile on May 27, 2022, which appointed the new managers, stated that the appointments were "effective as of the date hereof" and would remain effective "until [the new managers'] resignation or removal." Dist. Ct. Dkt. No. 168-10 at 6. It is uncontested that Gentile appointed these new managers, and that they modified the operating agreement to affect their pay, without any prior

---

[5] Although the district court made these findings in connection with its alternative holding that it was authorized to impose the receivership under the federal securities laws, those findings also support its use of its equitable powers to impose the receivership to remedy a violation of its prior order, namely, the AMO.

11

approval from the monitor as required under the AMO. Therefore, the district court correctly determined Gentile's actions, on behalf of GPB, to be a violation of the AMO.

Finally, the district court also did not clearly err in determining that the violations were not cured, as required by the AMO, within ten business days of notice from the monitor on May 31, 2022, that the AMO had been violated. Indeed, rather than revoke the managers' appointments, obtain their resignations, or withdraw the changes to the operating agreement, Gentile and the new managers continued to assert their legitimacy after receiving the monitor's notice. For example, in a June 30, 2022 letter to counsel for GPB and the monitor, counsel for the purported new managers continued to describe his clients as "the newly appointed managers of GPB Capital." Joint App'x at 435. The purported new managers, through counsel, further claimed that "until GPB's current manager confers with the newly appointed managers and allow[s] [them] to participate in GPB governance and management oversight, . . . liquidation of GPB portfolio company assets, distributions of capital, and major decisions that will affect the course of the GPB funds should not take place." *Id.* at 437. The fact that the monitor objected to the appointment of the new managers and the changes to the operating agreement did not relieve Gentile and the new managers, acting on behalf of GPB to commit the violations, of the obligation under the AMO to cure those violations within the requisite ten business days of receiving notice from the monitor. Instead, the new managers purportedly resigned well after the ten-day window and Gentile claimed to withdraw their appointments only after the R&R was issued on July 28, 2023. Moreover, as the district court noted, Magistrate Judge Scanlon found that "Gentile's actions had caused 'a fracture in GPB's leadership that is irremediable without court intervention'" and "'on one hand, GPB, under the purview of the Monitor, has been working to address the state in which Mr. Gentile left

12

it and move forward in a manner that is productive to its investors,' while 'on the other hand, GPB is in the precarious position of operating with three new 'purported' managers and a 'purportedly' amended Operating Agreement, both of which may actively undermine the aforementioned efforts.'" *GPB Cap. Holdings*, 2023 WL 8468467, at *4 (alterations adopted) (quoting R&R, at 26). Thus, there is no basis to disturb the district court's finding that there was a failure to cure the violations of the AMO within ten business days of notice from the monitor.

In sum, we conclude that the district court did not abuse its discretion in converting the monitorship into a receivership pursuant to the explicit terms of the AMO and its inherent equitable power to enforce its prior court order.

The SEC has also filed a motion to lift this Court's stay of the portions of the district court's orders appointing a receiver pending appeal. In light of our resolution of the merits of this appeal, we find that a stay is no longer necessary and grant the motion to lift the stay. *See, e.g.*, *Li Hua Lin v. U.S. Dep't of Just.*, 453 F.3d 99, 112 (2d Cir. 2006).

\*       \*       \*

We have considered Appellants' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the district court's orders and **VACATE** the stay.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

13